838 F.Supp. 432 (1993)
HOME BOX OFFICE, Plaintiff,
v.
CARLIM, INC., d/b/a Crusoe's Restaurant and Bar, Defendant.
No. 4:92CV2495-DJS.
United States District Court, E.D. Missouri, E.D.
November 23, 1993.
*433 M. Harvey Pines, Schramm and Pines, St. Louis, MO, for plaintiff.
Ted F. Frapolli, Mertz and Stern, St. Louis, MO, Frank A. Conard, St. Charles, MO, Christopher J. Doskocil, President, Doskocil and Doskocil, St. Louis, MO; Daniel C. Aubuchon, President, Aubuchon and Raniere; Thomas G. Berndsen, Charles F. Dufour, Jr., Partner, Becker and Dufour, St. Louis, MO, and Samuel B. Murphy, Jr., Law Offices of Samuel B. Murphy, Jr., Clayton, MO, for defendant.

MEMORANDUM
STOHR, District Judge.
Plaintiff ("HBO") filed its complaint in two counts, alleging that defendant ("Carlim") had illegally pirated plaintiff's satellite broadcast signal and displayed HBO programming on the night of November 23, 1991, in violation of several provisions of the Communications Act of 1934, as amended by the Cable Communications Policy Act of 1984 ("the Communications Act"), specifically 47 U.S.C. §§ 553 and 605, and the Copyright Act, 17 U.S.C. § 504(c). Plaintiff has voluntarily dismissed Count II, the copyright claim. Count I, the Communications Act claim, was tried to the Court sitting without a jury on October 4, 1993. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, in accordance with Fed.R.Civ.P. 52(a).

Findings of Fact
1. HBO is a division of Time Warner Entertainment Company, L.P., a limited partnership organized and existing under the laws of Delaware, with its principal place of business at 1100 Avenue of the Americas, New York, New York 10036.
2. Carlim is, and was on November 23, 1991, a Missouri corporation existing under the laws of Missouri and operating a commercial establishment at 3152 Osceola Street in St. Louis, Missouri known as Crusoe's Restaurant and Bar ("Crusoe's").
3. Stephen Limmer is president of Carlim, Inc. and a 50% shareholder. Michael Guentz is secretary and vice-president of the corporation and also a 50% shareholder.
4. HBO holds rights to produce, exhibit, distribute and transmit various sports events and other sports-related programming as well as movies and other entertainment programming. Specifically, HBO is the owner of a registered copyright in a program entitled "World Championship Boxing, Evander Holyfield vs. Bert Cooper and Lennox Louis vs. Tyrell Biggs," which was broadcast by HBO on November 23, 1991 from approximately 9:10 p.m. to 11:00 p.m. Central Time.
5. HBO transmits its programming service through the United States via satellites, and did so on November 23, 1991.
6. HBO's transmissions are, and were on November 23, 1991, intended for direct receipt by authorized recipients only.
7. HBO's distribution policy is to limit subscriptions to those for private residential use only.
8. Carlim has never been, and was not on November 23, 1991, an authorized recipient *434 of HBO programming through satellite, cable or any other means of transmission.
9. Carlim purchased and installed a satellite system at Crusoe's in 1985, primarily for the purpose of displaying sports programming to attract customers.
10. In 1987, Carlim purchased a Video Cipher II decoder and installed it in the satellite system at Crusoe's.
11. In 1989, Carlim updated some of the components of Crusoe's satellite system.
12. Carlim purchased the decoder intending to use it to unscramble and display scrambled programming without paying for any subscriptions.
13. To prevent unauthorized persons and entities from viewing its programming, HBO uses, and used on November 23, 1991, an electronic device to scramble or encrypt its satellite transmissions.
14. A satellite system may be supplemented with a decoder to unscramble an encrypted signal received by the system's satellite dish.
15. Each decoder has a unique video cipher number. An HBO satellite subscriber reports his or her decoder's video cipher number to HBO, which then incorporates the number into the information processed during the satellite relay of the broadcast signal so as to identify the particular decoder as one authorized to unscramble the HBO signal.
16. The installation of a "pirate" computer chip in a decoder enables the decoder to unscramble and receive "in the clear" encrypted satellite signals which the decoder is not authorized to receive.
17. In November 1991, to facilitate an investigation of unauthorized interception and display of HBO sports programming, HBO requested that Gene Jones, of Gene Jones Private Investigations, identify bars and restaurants in the St. Louis area which might show sports programming.
18. Gene Jones in turn contacted Rich Hammerschmidt, of Hammer and Associates Investigations, to identify such bars and restaurants in south St. Louis city and south St. Louis County. One such establishment identified by Hammerschmidt was Crusoe's, based on his observation of a satellite dish on its roof.
19. On November 23, 1991, at Hammerschmidt's request, Damian Darian went to Crusoe's during the broadcast of the Holyfield fight to determine whether Crusoe's was exhibiting HBO programming.
20. Darian arrived at Crusoe's at approximately 10:17 p.m.
21. The Holyfield fight was not being displayed on any of the television screens in Crusoe's bar when Darian entered, but after several patrons asked Crusoe's personnel about the Holyfield fight, the bartender changed the channel and Darian observed "G1-23" on the screen momentarily, as the fight was turned on.
22. G1-23 is HBO's satellite channel description.
23. Darian did not hear the audio portion of the broadcast, but saw on the video display that there were 13 seconds remaining in the sixth round of the Holyfield fight when the channel was switched to HBO.
24. Darian's form report of his investigations at Crusoe's contained the following information, supplied by Darian in the blank captioned "DESCRIPTION OF SPECIFIC OBSERVATIONS ON TV: (GRAPHICS, ETC.)":
There was 13 seconds left of the sixth round. They were working on Coopers [sic] right eye as they were going into the seventh round. During the seventh round they stopped the fight with three seconds left.
25. Darian left Crusoe's at approximately 10:35 p.m.
26. On November 23, 1991, and at the time of trial, Crusoe's satellite system's decoder contained a pirate chip and was able to unscramble and receive the HBO signal without authorization from HBO.

Conclusions of Law
HBO's Communications Act count relies on two distinct statutory provisions, 47 U.S.C. §§ 553 and 605. The pertinent prohibition of § 553(a)(1) is that:

*435 No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
As the caption of § 553 indicates, it is intended to address "unauthorized reception of cable service" (emphasis added). By contrast, as its caption suggests, § 605 is directed to "unauthorized publication or use of communications" (emphasis added). The pertinent portion of § 605(a)(1) provides that:
No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.
The Court has found that both on November 23, 1991 and at the time of trial, defendant's satellite system contained a pirate chip which allows defendant to receive and unscramble the encrypted HBO signal, though not authorized to do so. This constitutes a violation of § 553(a)(1)'s proscription of unauthorized receipt or interception of a cable communications service. The Court has further found that defendant displayed HBO's broadcast of the Holyfield fight on November 23, 1991, though not authorized to do so, which constitutes a violation of § 605(a)'s proscription of unauthorized interception and publication of a broadcast communication.
HBO seeks injunctive relief, statutory damages, attorney's fees and costs. Section 553(c)(3)(A)(ii) states that a party aggrieved by violation of § 553 "may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Section 553(c)(3)(B) authorizes the Court to increase the statutory damages under certain circumstances:
In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory ..., by an amount of not more than $50,000.
Similarly, § 605(e)(3)(C)(i)(II) provides that a party aggrieved under § 605(a) "may recover an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just." Section 605(e)(3)(C)(ii) further provides that:
In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
Carlim's president, Stephen Limmer, appears to have believed Carlim did not "need" a subscription for premium channels such as HBO and ESPN if Carlim obtained a decoder capable of unscrambling their encrypted signals, and testified that the intention behind supplementing Crusoe's satellite system with a decoder was to be able to unscramble and display encrypted programming so as to attract customers to the bar. In light of this testimony, the Court finds that Carlim's unlawful interception and receipt of the unscrambled signal by use of the decoder and pirate chip  the conduct prohibited by § 553  was willful "and for purposes of commercial advantage or private financial gain." By contrast, the Court does not find defendant's violation of § 605(a) to be willful. The only conduct proved to be in violation of the "publication or use" statute  the display of a small portion of the Evander Holyfield fight on November 23, 1991  was not shown to be intended to garner a commercial advantage or private financial gain, especially in light of the circumstances of the display and in the absence of any promotion of the broadcast. Accordingly, the Court finds that statutory damages of $1,000, increased by an additional $1,000 for willfulness, are appropriate and just to redress defendant's violation of § 553, and that statutory damages of $1,000 are appropriate and just to redress defendant's non-willful violation of § 605.
In addition to this total of $3,000 in statutory damages, HBO is entitled under § 553(c)(2)(A) and (C) and § 605(e)(3)(B)(i) *436 and (iii) to the injunctive relief sought in its complaint, as well as reasonable attorney's fees and costs. At trial, HBO adduced proof relative to its request for an award of attorney's fees and costs through the testimony of Harvey Pines, a partner in the law firm representing HBO. Local Rules 24(C) and 30 provide a mechanism for the assertion of requests for costs and attorney's fees; those rules contemplate post-judgment filing of a bill of costs and a petition for attorney's fees. In the Court's view, the local rules' methods afford the opposing party an opportunity to formally respond and object to the fees and costs claimed which cross-examination of Pines did not allow. The judgment entered now will therefore reflect plaintiff's entitlement to reasonable attorney's fees and costs, but HBO will be required to seek particular amounts of fees and costs through the mechanisms provided for in the local rules. The parties are strongly encouraged to attempt to reach an amicable resolution of the amounts of fees and costs, so as to conserve their own time and expense as well as the resources of the Court.[1]

JUDGMENT
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of plaintiff and against defendant on Count I of plaintiff's complaint in the total amount of $3,000 in statutory damages, consisting of $1,000 pursuant to 47 U.S.C. § 553(c)(3)(A)-(ii), $1,000 pursuant to 47 U.S.C. § 553(c)(3)(B), and $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), plus reasonable attorney's fees and costs and such post-judgment interest as is allowed by law at the applicable rate of 3.57%.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendant and its officers, shareholders, servants, agents, employees, successors and assigns, and those persons in active concert or participation with any of them, are permanently enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception of the cable television programming, service or signal of Home Box Office, including, without limitation, unscrambling, receiving, intercepting, using, retransmitting, divulging, appropriating, exhibiting or displaying any of the satellite transmissions of plaintiff's satellite signal or cable programming, without prior written authorization of plaintiff.
NOTES
[1] The Court also notes that its attempts to harmonize the time sheets and slips admitted as plaintiff's exhibits at trial with the fee figures testified to by Mr. Pines were unsuccessful. Should the filing of a petition for attorney's fees prove necessary, the Court requests that HBO reexamine its previous submissions and file a petition which adequately explains and demonstrates the relationship between the fees claimed and the figures shown in the exhibits filed in support of the petition.