838 F.Supp. 436 (1993)
HOME BOX OFFICE, Plaintiff,
v.
GEE-CO INC., d/b/a Sports Cafe, Defendant.
No. 4:93CV600-DJS.
United States District Court, E.D. Missouri, E.D.
November 23, 1993.
*437 M. Harvey Pines, Schramm and Pines, St. Louis, MO, for plaintiff.
Samuel B. Murphy, Jr., Law Offices of Samuel B. Murphy, Jr., Clayton, MO, for defendant.

MEMORANDUM
STOHR, District Judge.
Plaintiff ("HBO") filed its complaint in two counts, alleging that defendant ("Gee-Co") had illegally pirated plaintiff's satellite broadcast signal and displayed HBO programming on the night of December 7, 1991, in violation of several provisions of the Communications Act of 1934, as amended by the Cable Communications Policy Act of 1984 ("the Communications Act"), specifically 47 U.S.C. §§ 553 and 605, and the Copyright Act, 17 U.S.C. § 504(c). Plaintiff has voluntarily dismissed Count II, the copyright claim. Count I, the Communications Act claim, was tried to the Court sitting without a jury on October 18, 1993. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, in accordance with Fed.R.Civ.P. 52(a).

Findings of Fact
1. HBO is a division of Time Warner Entertainment Company, L.P., a limited partnership organized and existing under the laws of Delaware, with its principal place of *438 business at 1100 Avenue of the Americas, New York, New York 10036.
2. Gee-Co is, and was on December 7, 1991, a Missouri corporation existing under the laws of Missouri and operating a commercial establishment at 12323 Natural Bridge in Bridgeton, Missouri known as Sports Cafe.
3. Anthony Gary George is president and chief executive officer of Gee-Co, and has been since at least 1989. George is also the majority shareholder in the corporation.
4. HBO holds rights to produce, exhibit, distribute and transmit various sports events and other sports-related programming as well as movies and other entertainment programming. Specifically, HBO is the owner of a registered copyright in a program entitled "World Championship Boxing: George Foreman vs. Jimmy Ellis and Roger May-weather vs. Rafael Pineda," which was broadcast by HBO on December 7, 1991 from approximately 9:00 p.m. to 10:45 p.m. Central Time.
5. HBO transmits its programming service through the United States via satellites, and did so on December 7, 1991.
6. HBO's transmissions are, and were on December 7, 1991, intended for direct receipt by authorized recipients only.
7. HBO's distribution policy is to limit subscriptions to those for private residential use only.
8. Gee-Co has never been, and was not on December 7, 1991, an authorized recipient of HBO programming through satellite, cable or any other means of transmission.
9. To prevent unauthorized persons and entities from viewing its programming, HBO uses, and used on December 7, 1991, an electronic device to scramble or encrypt its satellite transmissions.
10. A satellite system may be supplemented with a decoder to unscramble an encrypted signal received by the system's satellite dish.
11. Each decoder has a unique video cipher number. An HBO satellite subscriber reports his or her decoder's video cipher number to HBO, which then incorporates the number into the information processed during the satellite relay of the broadcast signal so as to identify the particular decoder as one authorized to unscramble the HBO signal.
12. The installation of a "pirate" computer chip in a decoder enables the decoder to unscramble and receive "in the clear" encrypted satellite signals which the decoder is not authorized to receive.
13. In 1989, when Gee-Co purchased the restaurant at 12323 Natural Bridge and opened the Sports Cafe, Gee-Co had repair work done on the satellite system already in place, which included a decoder.
14. In October, 1989, within months of opening the Sports Cafe, George learned that the decoder in the Sports Cafe's satellite system contained a pirate chip which made it capable of unscrambling encrypted signals, including HBO's, without authorization.
15. Upon learning of the pirate chip, George made no effort to remove it from the decoder.
16. On December 7, 1991 and through approximately October 15, 1993, by virtue of the pirate chip, Gee-Co's satellite system at the Sports Cafe was capable of receiving and unscrambling HBO's encrypted transmissions without authorization from HBO.
17. In 1991, HBO employed a national firm to sub-contract investigations around the country to identify commercial establishments displaying HBO without authorization.
18. Cindy Jones was hired to do investigations for HBO on December 7, 1991 during the Foreman/Ellis fight.
19. Jones arrived at the Sports Cafe at approximately 10:20 p.m. with her friend, Lisa Nickel.
20. After finding seats, Jones and Nickel saw that the Foreman/Ellis fight was being displayed on three television screens, one large-screen television and two smaller television sets. The audio portion of the broadcast was not audible; the noise in the bar included music played by a live band.
*439 21. Jones observed the HBO logo on the time clock shown on the screen, as well as on the commentators' microphones.
22. Jones and Nickel also saw that a number of the approximately sixty patrons in the bar were watching the fight and verbally reacting to it.
23. The fight ended in the third round, approximately eight minutes after Jones and Nickel arrived, after which they observed commentators on the screen, presumably discussing the fight.
24. Jones and Nickel left the Sports Cafe at approximately 11:00 p.m.

Conclusions of Law
HBO's Communications Act count relies on two distinct statutory provisions, 47 U.S.C. §§ 553 and 605. The pertinent prohibition of § 553(a)(1) is that:
No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
As the caption of § 553 indicates, it is intended to address "unauthorized reception of cable service" (emphasis added). By contrast, as its caption suggests, § 605 is directed to "unauthorized publication or use of communications" (emphasis added). The pertinent portion of § 605(a) provides that:
No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.
The Court has found that on December 7, 1991 and through approximately October 15, 1993, defendant's satellite system contained a pirate chip which allowed defendant to receive and unscramble the encrypted HBO signal, though not authorized to do so. This constitutes a violation of § 553(a)(1)'s proscription of unauthorized receipt or interception of a cable communications service. The Court has further found that defendant displayed HBO's broadcast of the Foreman fight on December 7, 1991, though not authorized to do so, which constitutes a violation of § 605(a)'s proscription of unauthorized interception and publication of a broadcast communication.
HBO seeks injunctive relief, statutory damages, attorney's fees and costs. Section 553(c)(3)(A)(ii) states that a party aggrieved by violation of § 553 "may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Section 553(c)(3)(B) authorizes the Court to increase the statutory damages under certain circumstances:
In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory ..., by an amount of not more than $50,000.
Similarly, § 605(e)(3)(C)(i)(II) provides that a party aggrieved under § 605(a) "may recover an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just." Section 605(e)(3)(C)(ii) further provides that:
In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
Gee-Co's president, Anthony George, testified that he was long aware of the ability of the Sports Cafe's satellite system to unscramble and display "in the clear" encrypted signals, including HBO's, without authorization, and further testified that he knew it to be unlawful. Despite this knowledge, George took no action to remove the pirate chip from the Sports Cafe system. In light of this testimony, the Court finds that Gee-Co's unlawful interception and receipt of the unscrambled signal by use of the decoder and pirate chip  the conduct prohibited by § 553  was willful "and for purposes of commercial advantage or private financial gain." The Court also finds that the conduct violative *440 of § 605(a) was willful, because it concludes that the display of the Foreman/Ellis fight on December 7, 1991 was purposeful and for commercial gain, in view of the large number of patrons watching the broadcast. Accordingly, the Court finds that statutory damages of $1,000, increased by an additional $2,000 for willfulness, are appropriate and just to redress defendant's violation of § 553, and that statutory damages of $1,000, increased by an additional $1,000 for willfulness, are appropriate and just to redress defendant's violation of § 605(a).
In addition to this total of $5,000 in statutory damages, HBO is entitled under § 553(c)(2)(A) and (C) and § 605(e)(3)(B)(i) and (iii) to the injunctive relief sought in its complaint, as well as reasonable attorney's fees and costs. At trial, HBO adduced proof relative to its request for an award of attorney's fees and costs through the testimony of Harvey Pines, a partner in the law firm representing HBO. Local Rules 24(C) and 30 provide a mechanism for the assertion of requests for costs and attorney's fees; those rules contemplate post-judgment filing of a bill of costs and a petition for attorney's fees. In the Court's view, the local rules' methods afford the opposing party an opportunity to formally respond and object to the fees and costs claimed which cross-examination of Pines did not allow. The judgment entered now will therefore reflect plaintiff's entitlement to reasonable attorney's fees and costs, but HBO will be required to seek particular amounts of fees and costs through the mechanisms provided for in the local rules. The parties are strongly encouraged to attempt to reach an amicable resolution of the amounts of fees and costs, so as to conserve their own time and expense as well as the resources of the Court.[1]

JUDGMENT
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of plaintiff and against defendant on Count I of plaintiff's complaint in the total amount of $5,000 in statutory damages, consisting of $1,000 pursuant to 47 U.S.C. § 553(c)(3)(A)-(ii), $2,000 pursuant to 47 U.S.C. § 553(c)(3)(B), $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), plus reasonable attorney's fees and costs and such post-judgment interest as is allowed by law at the applicable rate of 3.57%.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendant and its officers, shareholders, servants, agents, employees, successors and assigns, and those persons in active concert or participation with any of them, are permanently enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception of the cable television programming, service or signal of Home Box Office, including, without limitation, unscrambling, receiving, intercepting, using, retransmitting, divulging, appropriating, exhibiting or displaying any of the satellite transmissions of plaintiff's satellite signal or cable programming, without prior written authorization of plaintiff.
NOTES
[1] The Court also notes that its attempts to harmonize the time slips admitted as plaintiff's exhibits at trial with the fee figures testified to by Mr. Pines were unsuccessful. Should the filing of a petition for attorney's fees prove necessary, the Court requests that HBO reexamine its previous submissions and file a petition which adequately explains and demonstrates the relationship between the fees claimed and the figures shown in the exhibits filed in support of the petition.