**MOUNTAIN CABLE COMPANY, d/b/a Adelphia Communications, Inc., Plaintiff,**

v.

**John H. CHOQUETTE, Jr., d/b/a Choquette Realty, Defendant.**

**No. Civ A 98–30027–MAP.**

United States District Court, D. Massachusetts.

June 21, 1999.

Damian R. LaPlaca, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Boston, MA, for plaintiff.

John A. Agostini, William Rota, Pittsfield, MA, for John H. Choquette, Jr., defendant.

Jan P. Myskowski, Brigid Hennessey, Freedman, DeRosa & Rondeau, North Adams, MA, for Sandra Livsey, defendant.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S STATEMENTS, AND PLAINTIFF'S APPLICATION FOR FEES AND COSTS*

PONSOR, District Judge.

## I. *INTRODUCTION*

These motions arise out of defendant's unauthorized interception and distribution of plaintiff's cable services in violation of 47 U.S.C. § 553. Defendant admits violating the statute, but disputes some issues surrounding the calculation of damages. For the reasons set forth below, this court will allow plaintiff's motion for summary judgment, permanently enjoin defendant from intercepting and distributing plaintiff's cable signals without authorization, find defendant in contempt, and award total damages in the amount of $34,393.82, including attorneys' fees and costs.

Plaintiff's motions to strike will be denied, as will defendants' motion for partial summary judgment.

## II. *FACTS & PROCEEDINGS*

Plaintiff operates a cable television system in western Massachusetts. Defendant John H. Choquette lives in North Adams, Massachusetts, where he owns and maintains several apartment buildings, including a three-unit apartment house at 415 Richview Avenue Extension. Choquette has provided the tenants in the building with cable television service for several years, though there is some dispute as to the exact dates.

One of Choquette's tenants at 415 Richview Avenue Extension, Sandra Livsey, subscribed to plaintiff's cable television programming. On March 2, 1998, plaintiff filed suit against Choquette, alleging that he had been intercepting plaintiff's cable signals to Livsey's apartment and illegally distributing them to the two other tenants in the building and to his own home nearby. (Docket No. 1)

Also on March 2, 1998, plaintiff sought and obtained a preliminary injunction from this court which, *inter alia,* enjoined Choquette from "intercepting, receiving or using plaintiff's communications or cable television services without authorization from plaintiff," and from "destroying, transferring or concealing any ... equipment used in or pertaining to the purchase, sale, lease, design, installation or advertisement or other use or application of unauthorized cable television equipment." (Docket No. 9) The order further directed defendant to allow plaintiff access to the apartment house and to defendant's home immediately upon service of the order for the purpose of inspecting, photographing and removing any equipment capable of use in the interception and distribution of cable signals. (*Id.*)

Following issuance of this order, on the evening of March 2, 1998, representatives

of plaintiff, accompanied by process servers, served the preliminary injunction on Choquette and sought to inspect the building. During the inspection, Choquette denied them access to a locked closet in the basement of the apartment house. By looking through a space between the closet wall and ceiling, however, plaintiff's representatives were able to see what they believed to be equipment capable of use in intercepting and distributing cable services.

Plaintiff persisted in its efforts to discover what was behind this closet door. Upon a motion by plaintiff to enforce the March 2, 1998 preliminary injunction, this court ordered defendant to allow plaintiff's representatives access to the locked closet. (Docket Nos. 25 & 26) But when plaintiff's representatives finally inspected the closet several weeks later, they found it empty, leading plaintiff to conclude that defendant had removed equipment from the closet in violation of this court's order.

Several motions are now before the court. This court will first consider plaintiff's motion for summary judgment and several related motions. It will then turn to plaintiff's contempt motion and its application for attorneys' fees and costs.

### III. *DISCUSSION*

#### A. *Summary Judgment*

Under 47 U.S.C. § 553(a)(1), "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." In moving for summary judgment, plaintiff contends that Choquette intercepted and distributed its cable services in violation of the statute, and seeks a permanent injunction, damages, enhanced damages and attorneys' fees arising from defendant's statutory violation.` (Docket No. 51)

Defendant concedes that he violated § 553, but contests the extent of damages and fees sought by plaintiff. Accordingly, this court will enter judgment for plaintiff on the question of liability, permanently enjoin defendant from intercepting and distributing plaintiff's cable services without authorization, and turn its attention to the question of damages.

#### 1. *Actual or Statutory Damages*

Subsection 553(c)(1) of the statute authorizes a party aggrieved by a violation of subsection (a)(1) to bring a civil action against the violator. In such an action, a plaintiff may recover either actual or statutory damages. *See* 47 U.S.C. § 553(c)(3)(A).

Actual damages are defined as the damages suffered by the aggrieved party "as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 553(c)(3)(A)(i). Computing the amount of actual damages, however, may pose several problems: for example, an aggrieved party may not be able to ascertain how long a defendant was intercepting its cable services, which services were taken, and how widely they were distributed.

In light of these difficulties, an aggrieved party may, in the alternative, seek to recover statutory damages and avoid the burden of determining the precise scope of loss. But statutory damage awards are limited: "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

In this case, it is virtually impossible to determine with any degree of certainty the extent of actual damages suffered by plaintiff. Plaintiff has estimated its total losses as $39,795.30. (Docket No. 52 at 16; Docket No. 69, Exhibit A) This figure, however, is based on numerous assumptions regarding both the length of time Choquette intercepted plaintiff's sig-

nals and the number and value of cable services used by Choquette's tenants. Given the lack of accurate information about the extent of actual damages suffered by plaintiff, assessment of actual damages would necessarily require highly speculative computations. In this circumstance the statutory damages subsection, 47 U.S.C. § 553(c)(3)(A)(ii), offers the fairer alternative. *See Cablevision Sys. New York City Corp. v. Lokshin*, 980 F.Supp. 107, 112 (E.D.N.Y.1997) ("Statutory damages are appropriate because of the difficulty in determining the extent of [defendant's] unauthorized used with any degree of accuracy.")

▇ In applying this subsection, the court must determine whether statutory damages may be assessed for each and every violation separately, or whether the $10,000 cap encompasses all the violations in a case. In other words, does the statutory $10,000 limit on damages apply to this case as a whole, or does it apply to each violation separately, *i.e.*, to each device used by defendant in intercepting cable services?

The answer to this question lies in subsection (b)(3), as amended in 1992, which states: "For purposes of all penalties and remedies established for violations of subsection (a)(1) of this section, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation." Although section (b) generally deals with criminal penalties, the plain language of subsection (b)(3) refers to "penalties and *remedies*," indicating the legislative intent to treat each device as a separate violation when fashioning civil sanctions. *See Columbia Cable TV Co. v. McCary*, 954 F.Supp. 124, 128 (D.S.C.1996) (treating each decoder device distributed by defendant as a separate violation); *Time Warner Cable v. Freedom Elecs., Inc.*, 897 F.Supp. 1454, 1459 (S.D.Fla.1995)

(holding that "[e]ach converter-decoder manufactured or distributed in violation of § 553 is a separate violation of the statute"); *but see Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1050 (9th Cir. 1997) (concluding that "it is inappropriate for a court to multiply a civil damage award under § 553 based on the number of violations involved in a single action"); *Lokshin*, 980 F.Supp. at 112–15 (rejecting multiple violations theory).[1]

▇ Because it appears that Choquette removed equipment used in his illegal activity from the locked closet in the basement of the apartment house at 415 Richview Avenue Extension, the record is unclear as to how many separate violations defendant may have committed. That is not to say, however, that the court is completely without guidance; the facts on record disclose that defendant intercepted cable services and distributed them to two apartment units plus his own home. Even assuming that cable services were routed to each apartment using a separate device, it can be reasonably inferred that defendant committed no more than three violations.

Mindful of these circumstances, this court will award $3,000 in statutory damages. Though substantially smaller than the award sought by plaintiff, this amount reflects the seriousness of defendant's violation balanced against the relatively small scale of his illegal activity. Faced with defendants who engaged in similar illegal conduct, other courts have made comparable awards. *See, e.g., McCary*, 954 F.Supp. at 128 (awarding $250 statutory damages for each of 340 decoders distributed by defendant); *Home Box Office v. Carlim, Inc.*, 838 F.Supp. 432, 435 (E.D.Mo.1993) (awarding $1,000 statutory damages where defendant tavern's satellite system contained a pirate chip capable of unscrambling encrypted signals in viola-

---

1. At least one court has found a separate violation for each month of unauthorized cable service received by defendant. *See International Cablevision, Inc. v. Cancari*, 960 F.Supp. 28, 31 (W.D.N.Y.1997). No basis in the statute, and no facts in this case, appear to justify this approach.

tion of § 553); *Home Box Office v. Gee–Co., Inc.,* 838 F.Supp. 436, 440 (E.D.Mo. 1993) (awarding $1,000 statutory damages under § 553 where defendant sports bar displayed illegally intercepted HBO signals to "large number of patrons").

### 2. *Enhanced Damages*

Plaintiff also seeks an award of enhanced damages, which defendant opposes in his motion for partial summary judgment. (Docket No. 57). Under 47 U.S.C. § 553(c)(3)(B), a court in its discretion may increase an award of damages by an amount not to exceed $50,000 if "the violation was committed willfully and for purposes of commercial advantage or private financial gain."

 Here, as it is beyond dispute that Choquette's statutory violation was willful, the question of enhanced damages turns on whether he intercepted and distributed plaintiff's cable services for "private financial gain." Choquette contends that in distributing the illegally intercepted cable services to his tenants, he did not charge "tenants a specific dollar amount under the lease for the cable service," and that the record therefore does not show that he derived private financial gain from his illegal activity. (Docket No. 55 at 6–7)

This argument is unconvincing. First, at least two of Choquette's tenants have stated under oath that Choquette agreed to provide them with cable service as part of their monthly rent. (Docket No. 53, Exhibit 3 at 30; Exhibit 4 at 2) Indeed, one of the leases in the record before the court unambiguously states that "Landlord shall pay for all utilities, HEAT, ELECTRIC, HOTWATER, GAS, CABLE." (*Id.,* Exhibit 4A) Second, and more significantly, it stands to reason that by providing his tenants with cable service, defendant earned more income from the rental units than he would have earned if he had not illegally intercepted and distributed plaintiff's cable services; not only was he almost certainly able to charge higher rents, but he was able to give his tenants

cable service at no cost to himself. In this very real sense, defendant can be understood to have violated the statute for the purpose of private financial gain. Thus, an award of enhanced damages is justified, and defendant's motion for partial summary judgment on the issue will be denied.

 The amount of enhanced damages assessed pursuant to subsection (c)(3)(B) is left to the court's discretion, though it may not exceed $50,000. Plaintiff asks this court to award the statutory maximum of $50,000. In this court's view, such an award would be excessive given that defendant's violation involved distributing cable services to only a handful of his tenants and himself. Moreover, the case law on this issue suggests that a more modest award is in order. *See, e.g., Lokshin,* 980 F.Supp. at 110 (reducing Magistrate's recommended $10,000 enhanced damages award to $1,500 where defendant received premium pay-per-view services for over six years); *McCary,* 954 F.Supp. at 128 (awarding $25 enhanced damages for each of 340 decoders distributed by defendant); *Carlim,* 838 F.Supp. at 435 (awarding $1,000 enhanced damages where defendant tavern's satellite system contained a pirate chip capable of unscrambling encrypted signals); *Gee–Co.,* 838 F.Supp. at 440 (awarding $2,000 enhanced damages where defendant displayed illegally intercepted HBO signals to "large number of patrons").

While there is some disagreement over the exact length of time during which Choquette intercepted and distributed cable services, it is clear that the illegal activity continued over the course of several years. The record also discloses that services were distributed to a handful of tenants, as well as to Choquette's residence. Against this backdrop, and given that the violation was committed willfully and for private financial gain, plaintiff will be awarded enhanced damages in the amount of $3,000.

This court's resolution of plaintiff's motion for summary judgment and defendant's motion for partial summary judgment makes it unnecessary for the court to consider plaintiff's motion to strike defendant's motion for summary judgment (Docket No. 58) and plaintiff's motion to strike defendant's statements (Docket No. 59). Those motions will therefore be denied as moot.

### B. *Contempt*

Plaintiff moves for an order to show cause why Choquette should not be found in contempt for his failure to obey this court's preliminary injunction and subsequent order requiring him not to conceal equipment and to allow plaintiff's representatives access to the locked closet in the basement of his apartment building. (Docket No. 48) Choquette responds that plaintiff has not been harmed by his actions because he has admitted liability and because inspection of whatever equipment may have been in the closet would therefore no longer be relevant to the case. Choquette further contends that consideration of contempt is unnecessary to the extent that 47 U.S.C. § 553 provides plaintiff with adequate remedies against him. (Docket No. 56)

"A civil contempt must be established by clear and convincing evidence and the underlying order must be clear and unambiguous in its terms." *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 61 F.3d 94, 98 (1st Cir.1995) Here, on March 2, 1998, this court explicitly enjoined Choquette from "destroying, transferring or concealing" any equipment pertinent to the unauthorized use of cable services. Choquette does not deny that he disobeyed this order by removing equipment from the locked basement closet. As a result, plaintiff was required to return to court to seek additional orders of enforcement. To this day, Choquette has failed to offer a satisfactory explanation as to what happened to the equipment removed from the locked closet.

Moreover, Choquette's actions deprived plaintiff of the opportunity to inspect the equipment in the closet; such an inspection might have assisted plaintiff in more accurately determining the extent of the damages to which plaintiff is entitled. In particular, the number of devices used by Choquette would have been relevant to determining the scope of damages.

This court is therefore convinced that defendant clearly violated its orders and holds Choquette in contempt of court. As a sanction for defendant's misconduct, plaintiff will be awarded an additional amount of $1,000.

### C. *Attorneys' Fees*

Pursuant to 47 U.S.C. § 553(c)(2)(c), a court may "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." As the prevailing party in this action, plaintiff asks this court to award $70,193.75 in attorneys' fees and $4,949.82 in costs. (Docket No. 67)

The first step in setting a fee award is to establish a "lodestar" by multiplying the total number of hours reasonably spent by a reasonable hourly rate. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984). A reasonable hourly rate is calculated by considering "such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Id.* at 951. A reasonable fee must be "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den,* 749 F.2d at 950. Once this lodestar figure is calculated, a court may adjust the award upward or downward to reflect other fac-

tors, including the result obtained. *See id.* at 951.

Plaintiff's lead counsel in this action seeks an hourly rate of $250 for 1999 and $230 for 1998. He was assisted by an associate, whose billing rate is $225 in 1999 and was $200 in 1998, and by a paralegal whose billing rate has remained at $100 throughout the litigation.

■ Defendant implies that while these hourly rates may be reasonable in Boston, Massachusetts, where plaintiff's counsel practices, they should be reduced to reflect the billing rates of attorneys practicing in Springfield, Massachusetts, where the litigation occurred. Notably, defendant does not provide affidavits suggesting that plaintiff's counsel's rates are inflated. Furthermore, plaintiff's counsel has been a member of the Massachusetts Bar for over ten years and brings considerable experience to this case. This court has previously expressed the view that a request up to $250 may represent a reasonable hourly rate for an experienced attorney, even if prevailing rates are somewhat lower than in other parts of the state. *See Stanton v. Southern Berkshire Reg'l Sch. Dist.*, 28 F.Supp.2d 37, 42–43 (D.Mass.1998). Nothing in this case changes that view. Accordingly, this court is satisfied with the hourly rates billed by plaintiff's counsel. Because the vast majority of hours worked by counsel were billed at the 1998 rates, this court will, for simplicity's sake, use those rates in reaching the lodestar figure, *i.e.*, $230 for lead counsel, $200 for the associate, and $100 for the paralegal.

■ The number of hours billed by plaintiff's counsel, however, is more problematic. According to counsel's affidavit in support of the application for fees and costs, lead counsel billed approximately 263 hours, his associate billed approximately 50 hours, and the paralegal 5.25 hours. Lead counsel's hours are excessive. As already noted, experienced counsel is entitled to an hourly billing rate

reflecting the expertise he has developed over the years; it is equally true, however, that his experience should enable him to handle a case in fewer hours than another lawyer with less experience. *See id.; see also Pearson v. Fair*, 980 F.2d 37, 47 (1st Cir.1992) (noting that a firm's high hourly rates presuppose familiarity and expertise and should reduce the number of attorneys necessary). Moreover, some tasks in this case could more efficiently have been assigned to less experienced attorneys.

■ This is not a case in which the court can point to a single or several billing entries and declare that counsel billed far too many hours for particular tasks. Rather, it is this court's "billing judgment" that the billing entries, considered in the aggregate, reflect more hours expended than reasonably necessary. *Pearson*, 980 F.2d at 47; *Ackerley Communications v. City of Somerville*, 901 F.2d 170, 171 (1st Cir.1990) (explaining that court would "not attempt a comprehensive accounting of each asserted expenditure of time and funds," but would instead "settle[ ] upon an amount of compensation that we deem reasonable for the nature of the work performed"). Granted, defendant's failure to comply with this court's orders may have required plaintiff's counsel to devote more time to this case than he would have otherwise. Nevertheless, this court finds the total number of hours billed by plaintiff's counsel to be excessive. To reflect these considerations, the number of hours billed by lead counsel will be reduced by forty percent, from 263 to 158, and the associate's hours will be reduced from fifty to thirty.

At least two other factors militate in favor of reducing the number of hours spent by counsel for purposes of the lodestar calculation. First, the hours billed by counsel include approximately ten hours devoted to plaintiff's efforts to settle its claims against Sandra Livsey, who was a defendant in this suit at one time. It is not reasonable to ask Choquette to pay for these hours. Ten hours will therefore be

subtracted from plaintiff's total hours billed.

■ Second, counsel has billed a significant amount of travel time at his full hourly rate, despite the First Circuit's admonition that it is "disinclined to compensate an attorney at professional rates for travel time." *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir.1980). Recognizing the First Circuit's preference, this court has previously compensated an experienced attorney's travel time at $100 an hour. *See Stanton*, 28 F.Supp.2d at 43. In this case, the format in which counsel has provided its billable hours makes it virtually impossible to separate out travel hours from regular work hours, because they are generally listed together as part of lump sums of hours and tasks. To adjust for travel time being billed at the full professional rate, an additional thirty hours will be subtracted from the total number of hours worked by lead counsel.

Together, these adjustments result in 118 hours reasonably billed by lead counsel, 30 by his associate, and 5.25 by the paralegal. One hundred and eighteen hours multiplied by $230 an hour yields a product of $27,140. Thirty hours multiplied by $200 an hour yields a product of $6,000. Five and a quarter hours times $100 an hour yields $525. The sum of these figures is $33,665.

■ Having reached this lodestar amount, the next step in the analysis is to consider whether any factors warrant adjusting the figure. *See Grendel's Den*, 749 F.2d at 951. "A preeminent consideration in the fee-adjustment process is the results obtained by the plaintiffs." *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 108–09 (D.Mass.1998) (citations and quotations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The First Circuit considers three meanings of the term "results obtained": plaintiff's success on each claim, relief actually achieved, and the societal importance of the right which has

been vindicated. *See Guckenberger*, 8 F.Supp.2d at 109 (quoting *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir.1997)).

■ In this case, plaintiff has obviously prevailed in the sense that defendant admitted liability and that plaintiff has been awarded damages. Plaintiff's victory, however, is tempered by the fact that it has been awarded damages in an amount considerably less than it sought. In the end, this was a significant, but not substantial, case. The goal of the statute is to severely punish, but not crush, the small offender. With this in mind, the court will make a further one-third reduction of the fee, for a total of $22,444.

Finally, this court will award plaintiff the $4,949.82 in costs it seeks, as authorized by 47 U.S.C. § 553(c)(2)(C).

## IV. CONCLUSION

In summary, the court's rulings on the various pending motions are as follows. Plaintiff's motion for an order to show cause (Docket No. 48) is ALLOWED. Plaintiff's motion for summary judgment (Docket No. 51) is ALLOWED. Defendant's motion for partial summary judgment (Docket No. 57) is DENIED. Plaintiff's two motions to strike (Docket Nos. 58 and 59) are DENIED.

Plaintiff's application for fees and costs (Docket No. 67) is ALLOWED. The court awards $3,000 in statutory damages, $3,000 in enhanced damages, and $1,000 as a sanction for defendant's acts of contempt. In addition, the court awards $22,444 in attorneys' fees and $4,949.82 in costs.

The total award against the defendant, $34,393.82, represents one of the most substantial penalties among reported decisions for statutory violations of this relatively modest scope. More widespread, commercial dissemination of pirated cable signals might well justify a larger award of damages in a future case. Considerations of equity and common sense in this case, however, persuade the court that this

award is proper and fully adequate both to sanction the illegal conduct and to fairly compensate plaintiff for the cost of obtaining redress.