Steven KLEIN; Warren Brandwine; on behalf of themselves and all others similarly situated

v.

GENERAL NUTRITION COMPANIES, INC.; Jerry D. Horn; William E. Watts; Louis Mancini; Edwin J. Kozlowski; Thomas H. Lee; Thomas R. Shepherd; Thomas H. Lee Equity Partners, L.P.; ML–Lee Acquisition Fund, L.P.; State Street Bank and Trust Company, As Trustee for the 1989 Thomas H. Lee Nominee Trust; John W. Childs; David V. Harkins; Anthony J. DiNovi; Morgan Stanley & Co., Incorporated; Alex Brown & Sons Incorporated; Donaldson, Lufkin & Jenrette Securities Corporation; PaineWebber Incorporated; Smith Barney, Inc.

Steven Klein, Warren Brandwine, Gaetan Lavalla and Edward Loewenton,* Appellants.

No. 98–3266.

United States Court of Appeals, Third Circuit.

Argued: Dec. 7, 1999.

Decided: Aug. 10, 1999.

* Pursuant to Rule 12(a), F.R.A.P.

340

M. Richard Komins (Argued), Leonard Barrack, Daniel Bacine, Barrack, Rodos & Bacine, Philadelphia, PA; Robert P. Sugarman, Salvatore P. Graziano, Milberg, Weiss, Bershad, Hynes, & Lerach, LLP, New York, N.Y., for Appellants.

Gordon W. Schmidt, Doepken, Keevican, & Weiss, Pittsburgh, PA, for Appellees General Nutrition Companies, Inc.; Jerry D. Horn; William E. Watts; Louis Mancini; Edwin J. Kozlowski; Thomas H. Lee; Thomas R. Shepherd; Thomas H. Lee Equity Partners, L.P.; ML-Lee Acquisition Fund, L.P.; State Street Bank and Trust Company, As Trustee for the 1989 Thomas H. Lee Nominee Trust; John W. Childs; David V. Harkins; and Anthony J. DiNovi.

Daniel J. Leffell (Argued); Marc Falcone, Paul, Weiss, Rifkind, Wharton, & Garrison, New York, N.Y., for Appellees General Nutrition Companies, Inc.; Jerry D. Horn; William E. Watts; Louis Mancini; and Edwin J. Kozlowski.

Sanford F. Remz, Hutchins, Wheeler, & Dittmar, P.C., Boston, MA, for Appellees Thomas H. Lee; Thomas R. Shepherd;

Thomas H. Lee Equity Partners, L.P.; Ml–Lee Acquisition Fund, L.P.; State Street Bank and Trust Company, as Trustee for the 1989 Thomas H. Lee Nominee Trust; John W. Childs; David V. Harkins; and Anthony J. DiNovi.

David J. Armstrong, Christopher T. Lee, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA; James W.B. Benkard (Argued), James H.R. Windels, William C. Komaroff, Davis, Polk & Wardwell, New York, N.Y., for Appellees Morgan Stanley & Co., Incorporated; Alex Brown & Sons Incorporated; Donaldson, Lufkin & Jenrette Securities Corporation; Paine-Webber Incorporated; and Smith Barney, Inc.

Before: NYGAARD, RENDELL, and WOOD, JR. **, Circuit Judges.

## OPINION OF THE COURT

HARLINGTON WOOD, JR., Circuit Judge.

Appellants are individuals who purchased shares of General Nutrition Companies, Inc. ("GNC") common stock between a February 7, 1996 public offering (the "public offering") and May 28, 1996. Appellants filed this class action lawsuit in August 1996, alleging violations of federal securities laws and state law. Appellants assert that the defendants failed to disclose material adverse facts concerning GNC's operations and, as a result, appellants purchased their stock at artificially inflated prices. The suit named three general groups of defendants. The first group (the "GNC defendants") consisted of GNC and several of its officers. GNC sold 1,635,834 shares in the public offering, realizing net proceeds of $33,939,466. The

second group, the "Lee defendants," including Thomas H. Lee Equity Partners, L.P., ML–Lee Acquisition Fund, L.P., State Street Bank and Trust Company as Trustee for the 1989 Thomas H. Lee Nominee Trust, Thomas H. Lee, Thomas R. Shepherd, John W. Childs, David V. Harkins and Anthony DiNovi, allegedly benefitted from the artificially inflated price by selling all of their privately held common stock in the public offering.[1] The third group included the investment banking firms that served as managing underwriters for the public offering (the "Underwriter defendants").

On December 2, 1996, defendants moved to dismiss for failure to state a claim. Plaintiffs responded by withdrawing their complaint. On March 21, 1997, plaintiffs filed an amended complaint, and, on June 30, 1997, defendants filed a second motion to dismiss. On March 30, 1998, Judge Standish granted defendants' motion and dismissed the complaint without leave to amend. Plaintiffs filed a timely appeal. After briefing had been completed in this court, on October 9, 1998, Judge Standish *sua sponte* recused himself from the matter pursuant to 28 U.S.C. § 455(b)(4)[2] and instructed the district court clerk to assign the case to another judge.

The amended complaint alleged violations of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), 77*o*; sections 10(b), 20, and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j, 78t, 78t–1; and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, and included several supplemental state law claims. Plaintiffs assert that defendants failed to disclose a series of factors that, by early 1996, were adversely affect-

---

** The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. The complaint alleged that the Lee defendants collectively sold all of the GNC stock that they owned in the public offering, allowing them to bail out of GNC with net proceeds in excess of $300,000,000.

2. Under 28 U.S.C. § 455(b)(4), a judge must disqualify himself when "[h]e knows that he ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings."

ing GNC's comparable store sales, revenues, and earnings. According to plaintiffs, this failure to disclose caused the price of GNC stock to be higher than it otherwise would have been, and defendants capitalized on this artificial inflation by selling 17,994,176 shares of GNC stock in the public offering for $21.50 a share, for a total of more than $340,000,000. On May 28, 1996, GNC announced that it anticipated that its comparable store sales for the second fiscal quarter of 1996 would be 3–6% lower than the second quarter of 1995, and the price of GNC stock fell to $14.00 a share.[3]

■ We review the district court's decision to dismiss *de novo. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 919 (3d Cir. 1999). We accept as true all factual allegations in the complaint and will affirm the dismissal "only if it is certain that no relief can be granted under any set of facts which could be proved." *Id.* (citations and quotations omitted).

■ As an initial matter, appellants filed a motion asking this court to vacate the judgment on appeal based on Judge Standish's recusal and to remand the case to allow another district judge to address the motion to dismiss. However, any alleged harm to appellants is cured by our plenary review of the district court's decision. *See Bhatla v. U.S. Capital Corp.,* 990 F.2d 780, 788 n. 10 (3d Cir.1993). Vacatur and remand are not necessary; we turn now to the merits of the appeal.

Appellants' alleged claims under the Securities Act against all three sets of defendants. These claims were based on alleged nondisclosures in the prospectus which was a part of the registration statement filed in connection with the public offering. Section 11 of the Securities Act, 15 U.S.C. § 77k, creates a private cause of action in cases in which a registration

statement either contains an untrue statement of material fact or omits a material fact that is required or necessary to make the other statements therein not misleading. Likewise, section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), creates a private cause of action against any person who offers or sells a security by means of a prospectus or oral communication which either contains an untrue statement of material fact or omits a material fact necessary to make the other statements therein not misleading.

■ Appellants contend that the defendants violated § 77k and § 77l(a)(2) by failing to disclose in the prospectus (1) a loss of third-party advertising support; (2) a worldwide shortage of deodorized distillate, a raw material used to produce Vitamin E; and (3) the fact that GNC's new store openings would siphon business from existing stores. Both § 77k and § 77l(a)(2) require that an undisclosed fact be material at the time of offering in order for liability to attach. As this court has noted, " '[a]n omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [act].' " *In re Donald J. Trump Casino Securities Litigation,* 7 F.3d 357, 369 (3d Cir.1993) (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Materiality is traditionally a question for the trier of fact. However, if the alleged "omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality," the court may rule them immaterial as a matter of law. *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 317 (3d Cir.1997). A determination of "materiality" takes into account considerations as to the certainty of the information, its availability in the public domain, and the need for the information in light of cautionary statements being made. *See*

3. This decline in price was only temporary. By June 1997, the price had rebounded to $28.00 a share, and, on March 30, 1998, the day that Judge Standish granted the motion to dismiss, the stock was trading at approximately $38.00 a share.

*Trump,* 7 F.3d at 371–72, 377; *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 283 (3d Cir.1992). As our analysis will show, the three alleged nondisclosures in the present case are immaterial as a matter of law.

■ GNC received third-party advertising support from manufacturers of certain products who published advertisements informing consumers that these products were available at GNC stores. On appeal, appellants assert that at the time of the public offering, defendants knew that advertising support from several third-party diet product manufacturers, including Cybergenics, was declining from the prior year. As support, appellants point to a portion of the amended complaint which alleges that in January 1996, GNC officials contacted senior executives at Cybergenics with respect to "concern about [Cybergenics'] lack of sales and its potential impact on Cybergenics' financial stability and ability to continue to provide GNC with free advertising support." This allegation addresses only "concern" and a "potential impact" on advertising support. "Where an event is contingent or speculative in nature, it is difficult to ascertain whether the reasonable investor would have considered the omitted information significant at the time." *Shapiro,* 964 F.2d at 283 (internal quotations and citations omitted). Additionally, the amended complaint clearly states that "[i]n January 1996, Cybergenics started a second wave advertising program for Quicktrim, that also provided free advertising support for GNC." According to the amended complaint, it was not until March 1996, a month after the public offering, that Cybergenics suspended or substantially reduced its advertising support for GNC. The allegations concerning advertising support from the other third-party diet product manufacturers are also speculative in nature. Furthermore, while the prospectus addressed third-party

advertising by sports nutrition product manufacturers, it made no reference to third-party advertising by diet product manufacturers, and the third-party advertising figures included in the prospectus showed a substantial decline from 1993 to 1994.[4]

■■ Vitamin E is an important ingredient in many vitamin supplements marketed by GNC. The prospectus stated that GNC maintained multiple sources of all raw materials. Appellants contend that this statement was materially false and misleading because it failed to disclose the existence of a worldwide shortage of deodorized distillate, a material used to produce vitamin E. The amended complaint alleges that by the second quarter of 1995, worldwide demand for vitamin E was exceeding supply and that, after the public offering, in February 1996, GNC informed its franchisees that the shortage was adversely affecting its ability to meet the demand for certain products containing vitamin E. Significantly, the amended complaint does not allege that the vitamin E shortage was private, internal GNC information. In fact, the amended complaint asserts that at all relevant times, the market for GNC stock was an efficient market which "promptly digested current information regarding GNC from all publicly-available sources and reflected such information in GNC's stock price." Federal securities laws do not require a company to state the obvious. *Trump,* 7 F.3d at 377. Furthermore, not only was the vitamin E shortage public knowledge, it was expected to be temporary as one of the two principal suppliers of deodorized distillate was in the process of building a new plant to increase its vitamin E production.

■ Appellants further allege that the prospectus failed to disclose that, at the time of the public offering, same store sales were being adversely affected by the opening of new stores in close proximity to

---

4. To the extent that the amended complaint alleges that prior to the public offering defendants engaged in a scheme with Cybergenics to conceal a decline in third-party advertising support, appellants have failed to fulfill the requirements of Fed.R.Civ.P. 9(b).

existing locations. The prospectus stated that GNC planned to open 350 new stores each year through 1999. We conclude that the prospectus adequately cautioned investors that GNC's expansion plans might not be achieved and that, even if achieved, expansion might not be profitable. The prospectus clearly stated that the profitability of the expansion depended in part on *obtaining suitable sites for the new stores.* This warning defeats appellants' claims with respect to this issue. *See Trump,* 7 F.3d at 371 (holding that meaningful cautionary language renders an alleged omission immaterial as a matter of law.)

All of the alleged omissions are immaterial as a matter of law. We need not continue our analysis; appellants have failed to state a valid claim under 15 U.S.C. § 77k or § 77*l.* Furthermore, controlling person liability under section 15 of the Securities Act, 15 U.S.C. § 77*o,* hinges on liability under either § 77k or § 77*l.* Since appellants have failed to allege sufficient facts to support a finding of liability under either § 77k or § 77*l,* their § 77*o* claims also fail.

■ Appellants also assert claims under section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and related SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, against Thomas Lee, Thomas Shepherd, and the GNC defendants based on alleged misrepresentations and omissions in various statements made by defendants following the prospectus. Appellants contend that defendants omitted the same facts from these post-prospectus statements that were omitted from the prospectus and, further, that defendants failed to disclose other facts that came into existence after the date of the prospectus but during the class period.

■ Appellants' Exchange Act claims are subject to a heightened pleadings standard. Fed.R.Civ.P. 9(b) requires a plaintiff in a fraud case to state the circumstances constituting fraud with particularity. Section 21D(b) of the Exchange Act, 15 U.S.C. § 78u–4(b), requires (1) in every action alleging a material misrepresentation or omission, the complaint must specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading and (2) in actions alleging fraud, the complaint must state with particularity facts giving rise to a strong inference that the defendants acted with intent to defraud. These claims also require a showing of materiality. *In re Trump,* 7 F.3d at 368.[5] Once again, " '[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [proceed].' " *Weiner,* 129 F.3d at 316 (quoting *Basic, Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)).

Appellants first point to a March 5, 1996 press release announcing GNC's results for the fiscal year and fourth quarter, which ended February 3, 1996. Appellants contend that the press release was

---

**5.** Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly . . .
(b) To use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe. . . .
15 U.S.C. § 78j.
Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality . . .
(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under with they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

misleading because it omitted the three allegedly material factors that were not disclosed in the prospectus and did not disclose the fact that GNC had artificially inflated revenues from private label products by doubling the quantity of new items that it automatically shipped to franchisees who were required to accept these larger quantities regardless of whether they could sell them.

There is nothing in the one-month passage of time from the prospectus to the press release that alters our finding discussed above that the worldwide vitamin E shortage and the new store openings were immaterial as a matter of law. Additionally, even if Cybergenics discontinued its third-party advertising support between March 1 and March 5, there is nothing to support an inference that GNC should or would have known by March 5 that the withdrawal would have a material effect. Appellants point out that the complaint alleges that doubling the automatic ship quantity had a "dramatic" impact on GNC's financial results for the first fiscal quarter of 1996, which ended April 27, 1996, as a factual allegation indicating that the factor was material. However, the March 5, 1996 press release did not address this time period. In fact, the results for the first quarter of 1996 were not announced until May 13, 1996.

■ Appellants further contend that defendants caused analysts to make statements which were materially false and misleading based on defendants' statements to securities analysts on both March 5 and April 3, 1996. The first statement by analysts, that "[t]he Company remains comfortable with our [first quarter] comp[arable] projection of 5%–6%," allegedly resulted from a conference call which was held following the release of the March 5 report. During the conference call defendants Watts and Kozlowski stated that GNC expected comparable store sales to grow by five to six percent in the first quarter of 1996. Appellants contend that defendants lacked a reasonable basis

for making this statement based on the three allegedly material factors that were omitted from the prospectus. However, as noted above, appellants have failed to provide factual allegations which would support a finding that these factors were material on March 5, 1996. The complaint alleges that the second set of statements were based on an April 3, 1996 meeting between GNC management and several securities analysts during which "GNC's management" disclosed that based on existing trends, GNC's comparable same store sales would increase by three to five percent rather than the five to six percent projected one month earlier. The complaint fails to attribute the statement to any specific member of GNC management. Fed.R.Civ.P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements. *See In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 265 (2d Cir.1993). Appellants' allegations concerning the April 3 meeting are insufficient to survive a motion to dismiss.

■ The remainder of appellants' Exchange Act claims are based on statements made after April 19, 1996, the last day on which any named plaintiff is alleged to have purchased GNC stock. Because appellants have failed to allege valid claims based on statements made before they purchased their GNC stock, the post-purchase statements cannot be a basis for liability. "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996) (internal quotations and citations omitted). Appellants have failed to allege facts sufficient to support a claim under section 10(b). Furthermore, because liability under 15 U.S.C. § 78t and § 78t–1 is based on section 10(b) liability, appellants

also fail to state valid claims under those sections.

 Alternatively, appellants contend that the district court erred in denying them leave to amend their complaint. We review a district court's denial of leave to amend a complaint for abuse of discretion. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir.1997). In the present case, the district court noted that the amended complaint was filed seven months after the original complaint and over three months after the motion to dismiss and that instead of seeking leave to file another amendment, the plaintiffs chose to respond to defendants' second motion to dismiss. The court further noted that the case had been pending for over a year and a half and held that allowing further amendment of the complaint would result in unreasonable delay. Plaintiffs have already had ample opportunity to plead their allegations properly and completely. In fact, the amended complaint stated that it "identified all of the facts uncovered" by investigation which support the allegations, and appellants fail to identify any new facts that they would allege in a third complaint. The district court did not abuse its discretion in denying appellants leave to amend their complaint a second time. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654 (3d Cir.1998).

The decision of the district court is AFFIRMED.