**In the Matter of Paul Winfield HENTHORN, Jr. and Trudy A. Henthorn.**

**Paul Winfield Henthorn, Jr. and Trudy A. Henthorn,**

v.

**GMAC Mortgage Corporation.**

No. CIV.A. 03–CV–2363.
Bankruptcy No. 00–21216.
Adversary No. 02–2284.

United States District Court, E.D. Pennsylvania.

Sept. 23, 2003.

Stuart A. Eisenberg, Carol B. McCullough, McCullough & Eisenberg, Warminster, PA, for Plaintiffs.

Robert A. Nicholas, Louis W. Schack, Reed Smith LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By the instant appeal, the appellant-debtors, Paul Winfield Henthorn, Jr. and his wife, Trudy Henthorn, ask this Court to reverse the Order entered on March 18, 2003 by Bankruptcy Judge Thomas M. Twardowski dismissing their amended complaint for failure to state a claim upon which relief may be granted. For the reasons which follow, the appeal is denied and Judge Twardowski's Order affirmed.

### History of the Case

According to the averments set forth in their Amended Complaint, Plaintiffs are the former owners of a residence located in Danielsville, Northampton County, Pennsylvania which they purchased in

1994 with a loan from the United Bank of Texas. The loan was secured by a recorded mortgage on the property. In July, 1998, the loan was sold and the mortgage was assigned to GMAC Mortgage Corporation, although the assignment of mortgage was apparently not recorded until May, 2000.

On March 13, 2000, the Henthorns filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Although the Henthorns apparently met and continued to meet their mortgage payment obligations to GMAC, GMAC nevertheless entered an appearance and filed a proof of claim in the bankruptcy proceedings in May, 2000. An amended proof of claim was subsequently filed in July, 2000. As a result of these filings, GMAC assessed the Henthorns $845.00 in bankruptcy costs and fees. On January 11, 2001, the Henthorns' Chapter 13 plan was confirmed by the Bankruptcy Court and the assets of the bankrupt estate were re-vested in the plaintiffs, including their real property.

Approximately one year later, on January 15, 2002, the plaintiffs sold the Danielsville property and the first mortgage to GMAC was paid off. In addition to receiving the outstanding principal amount and accrued interest thereon, GMAC also received the $845.00 in outstanding "bankruptcy costs" at the time of the settlement. As these bankruptcy costs were incurred before confirmation of the Chapter 13 plan by the Bankruptcy Court, Plaintiffs contend that these charges are illegal. They therefore filed suit in this Court against GMAC on behalf of themselves and "on behalf of a national class of persons of which [they] are members and representative: debtors who have been in a bankruptcy proceeding(s) in which defendant, in its capacity as mortgagee, servicer and/or subservicer of mortgage loans, has imposed upon the members of the Class

charges for bankruptcy-related attorney's fees and costs allegedly incurred during bankruptcy proceedings and which have not been the subject of an application to and approval by the bankruptcy court, or which have been the subject of an application denied by the Court, and/or which otherwise may not be permitted by law and/or contract." (Amended Complaint, ¶ 10). Specifically, the Amended Complaint raised claims for violations of the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692e and 1692f, violations of the Bankruptcy Code, 11 U.S.C. §§ 105, 362 and 506(b), violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et. seq.* and Loan Interest and Protection Act 41 P.S. § 401, *et. seq.* (governing residential mortgages), breach of contract and for injunctive relief. Via consent order approved by Judge Schiller on July 12, 2003, this matter was transferred to the Bankruptcy Court to be heard as an adversary action. On March 18, 2003, Judge Twardowski granted the defendant's motion to dismiss and this appeal followed.

### *Standard of Review*

 28 U.S.C. § 158(a),

The district courts of the United States shall have jurisdiction to hear appeals
 (1) from final judgments, orders, and decrees;
 (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
 (3) with leave of court, from other interlocutory orders and decrees;
and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Under Fed.R.Bankr.P. 8013,

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

In considering such bankruptcy appeals, the district courts are thus required to review the bankruptcy court's findings of fact for clear error and apply plenary review to its conclusions of law. *IRS v. Pransky,* 318 F.3d 536, 542 (3d Cir.2003); *In Re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631, 635 (3d Cir. 1998).

Of course, pursuant to Fed.R.Bankr.P. 7012(b), Fed.R.Civ.P. 12(b)(6) applies in adversary proceedings such as this one. Under that rule, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000). *See Also: Ford v. Schering–Plough Corp.,* 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition*

*Companies, Inc.,* 186 F.3d 338, 342 (3d Cir.1999)(internal quotations omitted).

### *Discussion*

As Judge Twardowski noted in his March 18, 2003 Order, Plaintiffs conceded that the U.S. Bankruptcy Code preempted Counts I, II, IV, V, VI and VII of their Amended Complaint and that the claims for violations of the Fair Debt Collection Practices Act, Unfair Trade Practices and Consumer Protection Law, Loan Interest and Protection Act, breach of contract and for injunctive relief were properly dismissed. Accordingly, the only issue with which we are here concerned is whether or not plaintiffs stated a viable cause of action for violations of Sections 105 and 506(b) of the Bankruptcy Code as set forth in Count III of the Amended Complaint.[1]

These sections read in relevant part as follows:

### § 105. Power of court

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

### § 506. Determination of secured status

. . . . . . . . . .

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater

---

1. At page 9, footnote 10 of their Brief on Appeal, Plaintiffs advise they are not appealing dismissal of their claim under § 362 of the Bankruptcy Code (concerning automatic stay).

than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

In essence, the plaintiffs interpret § 506(b), to mean that "any bankruptcy-related attorney's fees and costs assessed by the defendant after the bankruptcy petition is filed are not allowed without application to and approval by the Bankruptcy Court." (Amended Complaint, ¶ 85). They further interpret § 105(a) as conferring upon them the right to bring a private cause of action for a violation of § 506(b).

■■■ Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 278, 121 S.Ct. 1511, 1514, 149 L.Ed.2d 517, 522 (2001), citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The question of the existence of a statutory cause of action is one of statutory construction and, as with any case involving interpretation of a statute, analysis must begin with the language of the statute itself. *Touche Ross*, 442 U.S. at 568, 99 S.Ct. at 2485. Of course, the question of what remedies are available under a statute that provides a private right of action is analytically distinct from the issue of whether such a right exists in the first place. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 65–66, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992).

■■■■ determining whether a private remedy is implicit in a statute not expressly providing one, courts should consider some four relevant factors. First, whether the plaintiff is one of the class for whose especial benefit the statute was enacted; second, whether there is any indication of legislative intent, explicit or implicit, to create such a remedy or to deny one; third, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and fourth, whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law. *Cort v. Ash*, 422 U.S. 66, 77, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). *See Also, Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

[6] ■■■■ Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code, it has a limited scope. *Gillman v. Continental Airlines*, 203 F.3d 203, 211 (3d Cir.2000). It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code. *Id.; United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir.1992); *In re Morristown & Erie R.R. Co.*, 885 F.2d 98, 100 (3d Cir.1989); *MFS Telecom, Inc. v. Motorola, Inc.*, 262 B.R. 893, 899 (D.Del.2001).

[7] ■ *Willis v. Chase Manhattan Mortgage Corp.*, Civ. A. No. 01–CV–1312, 2001 WL 1079547 (E.D.Pa. Sept.14, 2001), Judge Padova addressed the very same issues with which we are here presented— whether a private right of action exists for violation of § 506(b) of the Bankruptcy Code and whether such a private cause of action may be asserted derivatively through § 105(a). In holding that neither

section permitted such a cause of action, Judge Padova first considered the four *Cort* factors and noted that the text and legislative history of § 506(b) do not evidence, either explicitly or implicitly, any intent to create a private right of action for a violation thereof and that the section was enacted to codify the then-current law benefitting creditors. Moreover, since the purpose of the section was to establish the formula for determining what parts of a creditor's claims are secured and what parts are unsecured, it does not proscribe the conduct of creditors or impart rights to debtors. Thus, plaintiff-debtors were not members of the class for whose special benefit the statute was enacted and a private remedy was *not* consistent with the underlying purpose of the legislation. As the plaintiffs were (as they are here) alleging that the mortgage holder violated federal law, only the fourth *Cort* factor (whether the cause of action was traditionally relegated to state law) militated in their favor and the *Willis* Court thus concluded that Congress did not intend to create a private right of action for debtors to enforce violations of § 506(b). *Willis,* 2001 WL 1079547 at *2–3. Since § 105(a) clearly does not authorize the bankruptcy court to create rights not otherwise available under applicable law, a derivative claim would not lie either. *Willis* at *3.

Having now carefully considered the briefs of the parties and the record in this matter and after thoroughly researching the area, we cannot find any other authority which is squarely on point in this circuit. *See Also: Sponaugle v. First Union Mortgage Corp.,* 40 Fed.Appx. 715, 2002 WL 1723894 (3d Cir.2002); *Dawson v. Dovenmuehle Mortgage, Inc.,* Civ. A. No. 00–CV–6171, 2002 WL 501499 (E.D.Pa. April 3, 2002); *Heiland v. Dovenmuehle Mortgage, Inc.,* Nos. 99–19056 DWS, Adv. No. 00–0610, 2001 WL 32658 (Bankr.E.D.Pa. Jan.3, 2001). Likewise, we find no factual or legal reason to distinguish *Willis* from the case at bar and given that we find Judge Padova's reasoning and conclusions to be sound, we hereby adopt the analysis set forth therein. On the basis of this analysis, we also find that Congress did not authorize or intend to authorize a private right of action for a violation of § 506(b) under either § 105(a) or § 506(b) itself. As the Bankruptcy Court granted the defendant's motion to dismiss for the same reasons, we now affirm its March 18, 2003 Order of dismissal.[2]

An order follows.

### ORDER

AND NOW, this 23rd day of September, 2003, upon consideration of the Appeal of Paul Winfield Henthorn, Jr. and Trudy A.

---

**2.** Although we do not reach the merits of Plaintiffs' claims, we would further agree with the Bankruptcy Court's finding that the assessment of the $845.00 in costs were clearly authorized under paragraph 7 of the mortgage, which provides, in relevant part:

> 7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and

pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property...Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.

Henthorn from the March 18, 2003 Order of the Bankruptcy Court for the Eastern District of Pennsylvania, it is hereby ORDERED that the Appeal is DENIED and the Order is AFFIRMED.