

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-1999

# General Instr. Corp v NU-TEK Electr. & Mfg, Inc.

Precedential or Non-Precedential:

Docket 98-1424, 98-1502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"General Instr. Corp v NU-TEK Electr. & Mfg, Inc." (1999). *1999 Decisions.* Paper 304.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/304

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 17, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1424 & 98-1502

GENERAL INSTRUMENT CORPORATION OF DELAWARE
        Appellant at No. 98-1502

v.

NU-TEK ELECTRONICS & MANUFACTURING, INC.,
        Appellant at No. 98-1424

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 93-cv-03854
(Honorable Robert S. Gawthrop, III)

Argued June 3, 1999

Before: SCIRICA and RENDELL, Circuit Judges,
and SCHWARZER, District Judge*

(Filed: November 17, 1999)

        STEPHEN W. ARMSTRONG,
         ESQUIRE (ARGUED)
        Montgomery, McCracken, Walker
         & Rhoads
        123 South Broad Street
        Philadelphia, Pennsylvania 19109

         Attorney for Appellant/Cross-
         Appellee, Nu-Tek Electronics &
         Manufacturing, Inc.

_____

* The Honorable William W Schwarzer, United States District Judge for
the Northern District of California, sitting by designation.

        GEOFFREY L. BEAUCHAMP,
         ESQUIRE (ARGUED)
        MICHAEL D. KRISTOFCO, ESQUIRE
        Wisler, Pearlstine, Talone, Craig,
         Garrity & Potash
        484 Norristown Road
        Blue Bell, Pennsylvania 19422

         Attorneys for Appellee/Cross-
         Appellant, General Instrument
         Corporation of Delaware

OPINION OF THE COURT

SCIRICA, Circuit Judge.

The issues raised here on appeal require us to address the remedial provisions of the Cable Communications Policy Act of 1984 which prohibits unauthorized interception or reception of cable communication services. See 47 U.S.C.A. S 553 (West 1991 & Supp. 1999).

Following a jury trial, Nu-Tek Electronics & Manufacturing, Inc. was ordered to pay $60,000 in damages and $412,178.92 in attorney's fees and costs to General Instrument Corporation for violating the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779 (codified as amended in scattered sections of 47 U.S.C.A.), specifically 47 U.S.C.A. S 553 which prohibits assisting in unauthorized cable service reception. The District Court also entered a permanent injunction barring Nu-Tek from continuing its unlawful activities. The key issues raised in this case are whether General Instrument Corporation had standing to bring a suit under the Cable Act (Nu-Tek's appeal) and whether statutory civil damages under the Act are limited to $60,000 regardless of the number of violations (General Instrument's cross-appeal). The scope of the injunction and the calculation of the amount of attorney's fees are also at issue.

We will affirm the judgment of the District Court on all issues.

2

I.

General Instrument Corporation manufactures cable descrambler boxes and sells them to programmers such as Comcast and Cablevision, who in turn rent them to their customers for a monthly fee. Nu-Tek Electronics & Manufacturing, Inc. engaged in the business of obtaining boxes manufactured by General Instrument and converting them to receive all signals sent by the cable programmer, whether or not the box owner had paid for the programming. Nu-Tek's converted boxes allowed cable subscribers to receive premium channels, even if they paid only for basic cable service. In industry terminology, the converted boxes were "nonaddressable" and "bulletproof," meaning that the cable programmer was not aware of their use and could not disable the descramblers nor control which channels were accessible. Between 1992 and 1995, Nu-Tek sold over 5,000 such devices.

General Instrument sued Nu-Tek in the Eastern District of Pennsylvania, alleging violations of (1) the Cable Communications Policy Act of 1984, 47 U.S.C.A. SS 553 and 605; (2) the Lanham Act; and (3) federal copyright law. Prior to trial, the parties voluntarily stipulated to a dismissal of the copyright claim. The District Court also dismissed General Instrument's claim brought under 47 U.S.C.A. S 605, leaving only the S 553 and Lanham Act claims. A jury rendered a verdict for General Instrument on the S 553 claim, and for Nu-Tek on the Lanham Act claim.

The District Court entered judgment in favor of General Instrument for $60,000 in damages, which it found to be the maximum amount allowed under the Cable Act, plus reasonable attorney's fees. See General Instrument Corp. v. Nu-Tek Elec. & Mfg., Inc., No. 93-3854, 1997 WL 325804 (E.D. Pa. June 4, 1997) (General Instrument II). A week later, the court issued an order permanently enjoining Nu-Tek from manufacturing or distributing General Instrument descrambler boxes modified to descramble cable signals without authorization, and forbidding Nu-Tek from transforming itself into a new entity to continue its cable theft business or contributing to other cable theft businesses. See Order of 6/11/97.

3

Subsequently, the District Court resolved several post-trial motions, some of which form the basis for this appeal -- namely, denying Nu-Tek's motion to amend the injunction and granting General Instrument's motion for attorney's fees on the Cable Act claim, fixing fees at $412,178.92. See General Instrument Corp. v. Nu-Tek Elec. & Mfg., Inc., 3 F. Supp. 2d 602 (E.D. Pa. 1998) (General Instrument III). The remaining issues raised by Nu-Tek on this appeal -- namely, whether General Instrument had constitutional, prudential, and statutory standing to sue Nu-Tek -- were decided in a 1996 pretrial order denying Nu-Tek's motion for judgment on the pleadings. See General Instrument Corp. v. Nu-Tek Elec. & Mfg., Inc., No. 93-3854, 1996 U.S. Dist. LEXIS 11175 (E.D. Pa. Jul. 30, 1996) (General Instrument I). In its cross-appeal, General Instrument contends the District Court erred in holding the Cable Act provided for an award of no more than $60,000 in statutory civil damages for "all" of Nu-Tek's S 533 violations. See General Instrument II, 1997 WL 325804, at *4.

The District Court had subject matter jurisdiction under 28 U.S.C.A. S 1331. We have jurisdiction under 28 U.S.C.A. S 1291.

II.

A. Standing

Nu-Tek contends that General Instrument lacked constitutional, statutory, and prudential standing. We exercise plenary review of standing and statutory construction issues, but review for clear error the factual elements underlying the District Court's determination of standing. See Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 224 (3d Cir. 1998); United States v. Contents of Accounts Nos. 3034504504 and 144-07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc., 971 F.2d 974, 984 (3d Cir. 1992).

1. Constitutional Standing

Constitutional standing is grounded in Article III's provision limiting the jurisdiction of federal courts to

4

"cases" and "controversies." U.S. Const. art. III S 2. The Supreme Court has established a three-part test for determining constitutional standing:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted) (citations omitted); accord Conte, 165 F.3d at 225 (constitutional standing has three elements: an injury in fact, traceable to defendant, and likely to be redressed by a favorable decision).

Contending General Instrument failed to prove "injury in fact," Nu-Tek asserts "[t]he testimony at trial in this case unequivocally showed that General Instrument never lost a single sale of its products" because, as evidenced by General Instrument's backlog, it could not satisfy existing customer demand.

We disagree. In determining whether a plaintiff satisfies the requirements of constitutional standing, the extent of the injury plaintiff suffered is generally immaterial to the question of injury in fact; "an `identifiable trifle' will suffice." Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 71 (3d Cir. 1990) (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973)). There is considerably more here. General Instrument's Director of Security, Stan Durey, testified at trial that General Instrument incurs significant ongoing costs in policing cable theft of its devices, and that General Instrument's customers (cable operators) hold General Instrument accountable for cable theft devices found on their systems. Durey recounted a specific instance in which General

5

Instrument lost an account with Scripps Howard Cable because of the rate of piracy in General Instrument cable boxes and the cost of remedying the problem. Durey's testimony was supported by testimony of executives from Comcast and Suburban Cable, who stated that security problems in General Instrument's systems would make them less likely to do business with General Instrument. These concrete, direct harms to General Instrument were more than sufficient to meet the injury-in-fact requirement. Furthermore, there is no doubt Nu-Tek was at least in part the cause of these harms, and a decision favorable to General Instrument would provide some redress. Consequently, we will uphold the District Court's determination that General Instrument satisfied constitutional standing requirements.

2. Prudential Standing

Nu-Tek argues that even if General Instrument has satisfied constitutional standing requirements, prudential limitations on standing preclude General Instrument from bringing a claim under S 553. Prudential standing consists of "a set of judge-made rules forming an integral part of `judicial self-government.' " Conte, 165 F.3d at 225 (quoting Lujan, 504 U.S. at 560). These requirements are designed to "limit access to the federal courts to those litigants best suited to assert a particular claim." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).

Where Congress has expressly conferred standing by statute, prudential standing concerns are superseded. See Warth v. Seldin, 422 U.S. 490, 501 (1975) ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules."); accord Conte, 165 F.3d at 227 (noting that "Congress can eliminate prudential restrictions on standing if it so desires" but "as a matter of statutory interpretation . . . Congress is presumed to incorporate background prudential standing principles, unless the statute expressly negates them"). Here, the District Court held that prudential standing concerns were superseded by S 553, which confers standing on "any person aggrieved" by a violation of the Act's anti-theft provision. See General Instrument I, 1996 U.S. Dist. LEXIS 11175, at *7.

Section 553(a) makes it unlawful to intercept or receive cable services without the operator's consent:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C.A. S 553(a). Subsection (c) of S 553 creates a private cause of action under which General Instrument sued:

> (1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Id. S 553(c)(1). A party who fulfilled the injury-in-fact prong of the constitutional standing requirements would also be a "person aggrieved" and would therefore fulfill the plain language of the statute. Furthermore, the phrase "any person aggrieved" is "ordinarily sufficient to confer standing on any party satisfying the constitutional requirements." Sioux Falls Cable Television v. South Dakota, 838 F.2d 249, 252 (8th Cir. 1988). Indeed, the Supreme Court recently stated that Congress' use of "any person aggrieved" in the Census Act, 13 U.S.C.A. S 209(b) (West 1990),"eliminated any prudential concerns in [that] case." Department of Commerce v. United States House of Representatives, 119 S. Ct. 765, 772 (1999).

But Nu-Tek points out that 47 U.S.C.A. S 605 (West 1991 & Supp. 1999) (directed at wire and radio communication theft and publication) also uses the term "any person aggrieved" and defines it as follows:

7

> [T]he term "any person aggrieved" shall include any
> person with proprietary rights in the intercepted
> communication by wire or radio, including wholesale or
> retail distributors of satellite cable programming, and
> [in certain cases] shall also include any person engaged
> in the lawful manufacture, distribution, or sale of
> equipment necessary to authorize or receive satellite
> cable programming.

47 U.S.C.A. S 605(d)(6) (West Supp. 1999). According to Nu-Tek, the addition of a clause in S 605 expressly including manufacturers of satellite equipment within the category of "any person aggrieved," and thus within the group granted a private cause of action, suggests that, by omitting such a clause in S 553, Congress did not intend to give manufacturers a right to sue under S 553.

This argument is unconvincing. Section 605 establishes two separate violations. Section 605(a) generally prohibits the unauthorized interception and publication of communications. Section 605(e)(4) prohibits manufacturing a device or piece of equipment which "is primarily of assistance in the unauthorized decryption of satellite cable programming . . . or is intended for any other activity prohibited by subsection(a)." These violations carry distinct penalty and statutory damage provisions, see 47 U.S.C.A. S 605(e)(1), (2), (3)(C)(i)(II), (4), and each is referenced in the creation of the private cause of action.[1] Section 553(c), on the other hand, creates a single private cause of action against violators of S 553(a)(1) which forbids intercepting, receiving, and assisting in intercepting or receiving "any communications service offered over a cable system." The criminal penalties described in S 553(b) are also stated in terms of violations of (a)(1) only. Section 553(a)(2) provides "the term `assist in intercepting or receiving' shall include the manufacture or distribution of equipment." In short, actions treated independently under S 605 are treated in a unified manner under S 553. Section 553's failure to separately enumerate the types of parties intended to be

_____

1. Section 605(e)(3)(A) (West Supp. 1999) provides: "Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action."

included under "persons aggrieved" is consistent with its uniform treatment of possible violations, whileS 605's particularity is consistent with the distinctions drawn throughout the section.

Furthermore, the structure of S 553 demonstrates that "the manufacture [and] distribution of equipment" is intended to be included in the types of harms which create a cause of action. In creating a private cause of action, S 553(c) ("any person aggrieved") specifically references S 553(a)(1) ("[n]o person shall . . . assist in intercepting") which is in turn referenced by S 553(a)(2) ("the term `assist in intercepting or receiving' shall include the manufacture or distribution of equipment"). As was made clear during the trial, cable box manufacturers like General Instrument are directly harmed by the manufacture or distribution of equipment which intercepts cable signals and, therefore, fall squarely within the language of the statute.

Whether using a fine brush or broad one, however, the legislative history of S 553 indicates that Congress intended it to provide extensive protection against cable service theft. See, e.g., H.R. Rep. No. 98-934, at 84 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4720.2 Such protection requires an inclusive interpretation of "any person aggrieved."

_____

2. The report states, in part:

> The committee is extremely concerned with a problem which is increasingly plaguing the cable industry--the theft of cable service.
> This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that is used for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices not only often permit one to obtain cable service without paying the installation and hook-up costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.

H.R. Rep. No. 98-934, at 84 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4720.

Accordingly, whether read as an explicit negation of prudential standing requirements, see Department of Commerce, 119 S. Ct. at 772, or in the context of its legislative structure and history, see Conte, 165 F.3d at 227, we believe Congress' use of the phrase "any person aggrieved" in S 553(c)(1) confers standing as broadly as the Constitution allows. Because we have already determined that General Instrument met the constitutional standing requirements, we conclude that General Instrument had standing to bring this action.

B. Amendment of the Injunction

Nu-Tek appeals the District Court's denial of its motion to amend the permanent injunction. We review the terms of the injunction for abuse of discretion. See McLendon v. Continental Can Co., 908 F.2d 1171, 1176 (3d Cir. 1990). But we review for clear error "factual determinations prerequisite to issuing the injunction." Id.  at 1177.

According to Nu-Tek, the permanent injunction is vague and overbroad, and accordingly would prohibit it from engaging in legitimate business activities. Nu-Tek claims the injunction violates Fed. R. Civ. P. 65 (requiring that an injunction "set forth the reasons for its issuance; . . . be specific in its terms [and] . . . describe in reasonable detail . . . the act or acts sought to be restrained") and Fed. R. Civ. P. 52(a) (requiring the District Court to "set forth the findings of fact and conclusions of law which constitute the grounds of the action" when issuing a permanent injunction).

In particular, Nu-Tek cites Paragraph 2 of the injunction as problematic. Paragraph 2.a prohibits Nu-Tek from distributing "any product" that is "designed, intended, or capable of being used, either alone or in conjunction with any other item, to receive . . . scrambled cable television programming without the knowledge or authorization of cable operators in whose systems [General Instrument] equipment is used." Nu-Tek argues the phrase"capable of being used" coupled with "either alone or in conjunction with any other item" would prohibit the sale of virtually all equipment, including legitimate, unmodified cable equipment. Paragraph 2.b prohibits Nu-Tek from

10

"[r]emoving, secreting, concealing, or destroying any records, property, or equipment relating to Nu-Tek's business operations," and Paragraph 2.c enjoins Nu-Tek from "[t]ransferring, removing, encumbering, or permitting the withdrawal of any assets or property presently belonging to Nu-Tek" without giving General Instrument five days' notice.3 According to Nu-Tek, the District Court failed to provide record support for these orders, in violation of Fed. R. Civ. P. 52.

Contending the restrictions "all have no limitation in their duration, and are set forth on a permanent, and seemingly perpetual basis," Nu-Tek requests the injunction be vacated and remanded to the District Court for proper findings. Furthermore, Nu-Tek argues, paragraph 2.c imposes an unjustifiable asset freeze that "gives [General Instrument] power to prevent Nu-Tek from pursuing any lawful business activities, and goes far beyond anything necessary to ensure satisfaction of any judgment."

A district court has authority to enjoin parties to a civil action subject to limited exceptions, none of which applies here. See Fed. R. Civ. P. 65(d), (e). Furthermore, 47 U.S.C.A. S 553(c)(2)(A) specifically states that a district court may "grant temporary and final injunctions . . . to prevent or restrain violations of subsection (a)(1) of [S 553]." As an equitable remedy, "the question whether injunctive relief is to be granted or withheld is addressed to the judge's discretion." Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d S 2941; see also 23 James Wm. Moore et al., Moore's Federal Practice P 65.01 (2d Ed. 1985). "An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity." Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944) (quoting Meredith v. Winter Haven, 320 U.S. 228, 235 (1943)). As noted, injunctive relief ordered by the District Court is reviewed with deference. Applying that standard, we do not believe the restrictions imposed here constitute an abuse of

_____

3. If General Instrument then withholds approval, Nu-Tek must seek permission from the court for the proposed action. See Permanent Injunction P2.c.

discretion. "The degree of particularity required[in an injunction] depends on the nature of the subject matter. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-92 (1949) (decrees of generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown)." Ideal Toy Corp. v. Plawner Toy Mfg. Corp., 685 F.2d 78, 83 (3d Cir. 1982). The District Court explained:

> The underlying fact is that Nu-Tek's business essentially facilitated cable theft in violation ofS 553. To stop such an operation is a primary purpose of the injunction. It forecloses none of Nu-Tek's remaining legitimate business because, from the start, no identifiable legitimate business existed. Likewise, I find that Nu-Tek should not be allowed to use its remaining assets, which in all likelihood can serve only to further other cable theft enterprises.

General Instrument III, 3 F. Supp. 2d at 607-08. Nu-Tek has not asserted that the District Court's findings were clearly erroneous. And it is readily apparent why, in light of such findings, the court would use broad language in the injunction. Assets that could be used by a second entity to facilitate "further cable theft" must be carefully monitored. While the District Court indicated that Nu-Tek may sell unmodified General Instrument descramblers without violating the injunction, the court ensured through its limiting language that this could not become a loophole through which Nu-Tek might continue to assist in the theft of proprietary programming. We see no abuse of discretion here and will uphold the District Court's denial of the motion to amend the injunction.

C. Attorney's Fees

Contending that $412,178.92 in attorney's fees is unreasonable, Nu-Tek requests that we vacate the District Court's award to General Instrument.4 We review an award of attorney's fees for abuse of discretion. See Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir. 1990). But "the

_____

4. Nu-Tek apparently does not challenge the decision to award attorney's fees.

12

question of what standards to apply in calculating an award of attorney's fees is a legal question, and therefore we exercise plenary review over this issue." Washington v. Philadelphia County Ct. of Common Pleas, 89 F.3d 1031, 1034–35 (3d Cir. 1996).

Here, the District Court adopted General Instrument's calculation of attorney's fees using the "lodestar" method: hours reasonably expended multiplied by a reasonable hourly rate. See General Instrument III, 3 F. Supp. 2d at 611–12. According to Nu-Tek, adherence to the lodestar method rewarded General Instrument for "overlawyering" and ignored General Instrument's "limited degree of success." As Nu-Tek points out, General Instrument originally asserted over $9 billion in damages, including $2 billion on the S 553 claim, before ultimately winning a judgment for only $60,000. Also, General Instrument prevailed only on the S 553 claim, but lost or withdrew its claims under S 605, the Lanham Act, and federal trademark and copyright law.

The lodestar method is "[t]he most useful starting point for determining the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Indeed, there is a "strong presumption that the lodestar figure represents the reasonable fee." City of Burlington v. Dague, 505 U.S. 557, 562 (1992) (internal quotation marks omitted). But courts also must consider the degree of success obtained-- an element which the Supreme Court has called "the most critical factor" in assessing reasonableness of a fee award. Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). In Farrar, the Court vacated an attorney's fees award of $280,000 where plaintiff recovered only nominal damages despite seeking $17 million in compensatory damages.

Nu-Tek contends that because General Instrument recovered only a small portion of its originally asserted monetary damages, its degree of success was too limited to warrant a $412,000 fee award. We disagree. The award of damages, although small in comparison to what was originally sought, represents the maximum amount the District Court believed could be awarded under the Cable

13

Act's statutory damages provision.[5] Furthermore, it is significant that General Instrument successfully obtained permanent injunctive relief against Nu-Tek, achieving the crucial goal of putting an end to Nu-Tek's illegal conversion of General Instrument's cable boxes. We have recognized "[t]he amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful [a] plaintiff was in his or her action . . . ." Washington, 89 F.3d at 1041. But that comparison may be an imperfect measure, especially where injunctive relief is also awarded. Because General Instrument obtained a permanent injunction barring Nu-Tek from engaging in its illegal activities and also received the maximum amount of statutory damages, its suit achieved substantial success. Therefore, the lodestar was an appropriate standard for damages.

Assuming the lodestar method is valid, Nu-Tek also claims the amount of fees was unreasonable in several other respects. Nu-Tek asserts that General Instrument's lead attorney, Geoffrey Beauchamp, recorded 1,171.82 hours of billing time on the case but excluded only about 330 hours as unrelated to the S 553 action when adjusting the fee petition. Portions of the hours claimed by other attorneys and paralegals were excluded in a similar manner. Nu-Tek, noting the alleged expertise of General Instrument's attorneys, asserts the amount of time spent on this allegedly simple case was excessive. Nu-Tek claims the District Court should have reduced the fees further to reflect this, though Nu-Tek does not explain by precisely how much. In addition, Nu-Tek contends the fees should have been lowered to reflect the duplicative efforts expended by General Instrument's attorneys -- for example, deposing one witness four times and spending three trial days on an ultimately unsuccessful Lanham Act claim. Finally, Nu-Tek claims the District Court "erred by not applying a sufficient negative multiplier to General Instrument's lodestar figure that accounted fairly for failed claims or the imprecise time records attached to General Instrument's fee petition." As noted, the court accepted

_____

5. The District Court's interpretation of the maximum damages provision is discussed infra.

14

General Instrument's negative multipliers, which resulted in reductions of over $76,000 for work that was clearly unrelated to the S 553 claim and an additional reduction of over $80,000 for work that was only partially related to the winning claim.

We are not convinced by Nu-Tek's arguments. As the District Court noted, "General Instrument submitted voluminous billing records and supporting affidavits, detailing the reasonable hourly rates, the attorneys, dates, the subject matter of the work, and the amount of time devoted to each matter." General Instrument III, 3 F. Supp. 2d at 611. The court did not blindly accept General Instrument's calculations. In rejecting Nu-Tek's assertion that General Instrument's fees were excessive and duplicative, the court explained in some detail the parties' competing stances, including Nu-Tek's contention that the case was a straightforward one, and concluded, "After careful review, I find that the multiplier used by GI fairly reflects the amount of work devoted to the prevailing S 533 claim." Id. at 612. On appeal, "[o]ur task is not to determine whether, sitting as a court of the first instance, we would have reached the same conclusion as the district court did." Washington, 89 F.3d at 1039. We see no abuse of discretion here and will uphold the District Court's award of attorney's fees.6

III.

General Instrument, as cross-appellant, contends the District Court erred in interpreting the Cable Act to preclude a recovery of statutory civil damages based on each illegal cable box sold by Nu-Tek. The District Court awarded General Instrument $60,000 in damages, believing this was the maximum amount authorized by the Cable Act. See General Instrument II, 1997 WL 325804, at *3.

_____

6. Nu-Tek also contests the District Court's inclusion of costs totaling more than $100,000, approximately half of which was paid for investigation. Nu-Tek asserts these costs were excessive. As with the attorney's fees, General Instrument has submitted careful records of its costs. The District Court found those records reasonable and appropriate. We see no abuse of discretion.

15

General Instrument contends the Cable Act, as amended by
Congress in 1992, requires the District Court to award
between $250 and $10,000 for each converted cable box
illegally sold by Nu-Tek. Because there were 3,596 such
devices sold after January 1, 1993 (the effective date of the
amended damages provision), General Instrument's theory
would authorize a far greater monetary recovery, ranging
from approximately $900,000 to over $215 million.

Section 553 allows plaintiffs to choose between actual
damages or statutory damages. 47 U.S.C.A. S 553(c)(3)(A).7

_____

7. S 553. Unauthorized reception of cable service

 (a) Unauthorized interception or receipt or assist ance in
 intercepting or receiving service; "assist in intercepting or
 receiving" defined

 (1) No person shall intercept or receive or assist in intercepting
or
 receiving any communications service offered over a cable system,
 unless specifically authorized to do so by a cable operator or as
may
 otherwise be specifically authorized by law.

 (2) For the purpose of this section, the term"assist in
intercepting
 or receiving" shall include the manufacture or distribution of
 equipment intended by the manufacturer or distributor (as the case
 may be) for unauthorized reception of any communications service
 offered over a cable system in violation of subparagraph (1).

 (b) Penalties for willful violation

 (1) Any person who willfully violates subsection (a)(1) of this
 section shall be fined not more than $1,000 or imprisoned for not
 more than 6 months, or both.

 (2) Any person who violates subsection (a)(1) of this section
 willfully and for purposes of commercial advantage or private
 financial gain shall be fined not more than $50,000 or imprisoned
 for not more than 2 years, or both, for the first such offense and
 shall be fined not more than $100,000 or imprisoned for not more
 than 5 years, or both, for any subsequent offense.

 (3) For purposes of all penalties and remedies established for
 violations of subsection (a)(1) of this section, the prohibited
activity
 established herein as it applies to each such device shall be
deemed
 a separate violation.

(c) Civil action in district court; injunctions; damages; attorney's fees and costs; regulation by States or franchising authorities

16

Before trial, General Instrument elected to seek statutory
damages. The statutory damages provision provides:
_____

(1) Any person aggrieved by any violation of subsection (a)(1) of
this section may bring a civil action in a United States district
court
or in any other court of competent jurisdiction.

(2) The court may--

(A) grant temporary and final injunctions on such terms as it may
deem reasonable to prevent or restrain violations of subsection
(a)(1)
of this section;

(B) award damages as described in paragraph (3); and

(C) direct the recovery of full costs, including awarding
reasonable
attorneys' fees to an aggrieved party who prevails.

(3)(A) Damages awarded by any court under this section shall be
computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by
him as a result of the violation and any profits of the violator
that
are attributable to the violation which are not taken into account
in
computing the actual damages; in determining the violator's
profits,
the party aggrieved shall be required to prove only the violator's
gross revenue, and the violator shall be required to prove his
deductible expenses and the elements of profit attributable to
factors other than the violation; or

(ii) the party aggrieved may recover an award of statutory
damages for all violations involved in the action, in a sum of not
less
than $250 or more than $10,000 as the court considers just.

(B) In any case in which the court finds that the violation was
committed willfully and for purposes of commercial advantage or
private financial gain, the court in its discretion may increase
the
award of damages, whether actual or statutory under subparagraph
(A), by an amount of not more than $50,000.

(C) In any case where the court finds that the violator was not
aware and had no reason to believe that his acts constituted a

violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

(D) Nothing in this subchapter shall prevent any State or franchising authority from enacting or enforcing laws, consistent with this section, regarding the unauthorized interception or reception of any cable service or other communications service.

17

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

(B) In any case in which the court finds that the violation was committed wilfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

Id. S 553(c)(3)(A)(ii)-3(B). Because the statute establishes an award of between $250 and $10,000 "for all violations involved in the action," the District Court held that $10,000 was the maximum amount that could be awarded, regardless of how many individual violations took place. See General Instrument II, 1997 WL 325804, at *3. The court awarded General Instrument $10,000 and, finding the testimony of Nu-Tek's CEO to be "an exercise in rank perjury," id., imposed the additional $50,000 discretionary penalty authorized by S 553(c)(3)(B).

In doing so, the District Court rejected General Instrument's argument that a 1992 amendment to S 553(b) established that statutory civil damages are to be awarded for each violation, rather than "all violations" as specified in S 553(c). As amended, S 553(b) provides:

(b) Penalties for willful violation

(1) Any person who willfully violates subsection (a)(1) of this section shall be fined not more than $1,000 or imprisoned for not more than 6 months, or both.

(2) Any person who violates subsection (a)(1) of this section willfully and for purposes of commercial advantage or private financial gain shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for the first such offense and shall be fined not more than $100,000 or imprisoned for not more than 5 years, or both, for any subsequent offense.

18

(3) For purposes of all penalties and remedies established for violations of subsection (a)(1) of this section, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

Reasoning that Congress had purposefully amended this "criminal" subsection of S 553 to establish cumulative criminal penalties for each violation while leaving undisturbed the plain language of S 553(c)(3)(A)(ii) establishing statutory civil damages of $250 to $10,000 "for all violations involved in the action," the District Court concluded the 1992 amendment did not require computation of civil damages on a per-violation basis. General Instrument II, 1997 WL 325804, at *2.

Another district court in the Eastern District of Pennsylvania has reached the same conclusion. See Comcast Cablevision v. Roselli, No. 96-2938, 1997 WL 36957 (E.D. Pa. Jan. 30, 1997). There, the court pointed out that 47 U.S.C.A. S 605, relating to wire and radio communication theft and publication, provides for an award of statutory damages of $1,000 to $10,000 for "each violation" of S 605(a). The court held:

Congress . . . left untouched the "for all violations involved" language in S 553(c)(3)(A)(ii). As a comparison of that provision with S 605(e)(3)(C)(I)(II) makes clear, Congress has no difficulty distinguishing "each" from "all."

* * * *

[U]nless and until Congress changes the word "all" in S 553(c)(3)(A)(ii) to "each," it would be inappropriate for a court to multiply a civil damage award under S 553 based on the number of violations involved in a single action.

Id. at *2-3. In contrast, district courts elsewhere have held that S 553(c)(3)(A)(ii) allows the court to award statutory damages for each violation of S 553(a)(1). See, e.g., Mountain Cable Co. v. Choquette, 53 F. Supp. 2d 107, 112 (D. Mass. 1999); Columbia Cable TV Co., Inc. v. McCary, 954 F. Supp. 124, 128 (D.S.C. 1996); Time Warner Cable of N.Y. v.

19

Freedom Elec., Inc., 897 F. Supp. 1454, 1459 (S.D. Fla. 1995). Significantly, in the only other circuit opinion to have addressed this question directly, the Court of Appeals for the Ninth Circuit, adopting the same reasoning and language as Roselli, held that statutory damages could not be assessed for each individual violation by a manufacturer like Nu-Tek but only for "all violations." See Continental Cablevision, Inc. v. Poll, 124 F.3d 1044, 1048-1051 (9th Cir. 1997).

As noted, S 553(c)(3)(A)(ii) provides "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." The plain language of the statute anticipates multiple violations and a single award of damages.

Furthermore, the structure of the statute makes clear that S 553(b), "Penalties for wilful violation," addresses criminal violations only. The 1992 amendment on which Nu-Tek relies was inserted only in S 553(b) and permits cumulative criminal sanctions. See Comcast Cablevision, 1997 WL 36957, at *3 ("Congress intended only to bring criminal sanctions for violations of S 553(a)(1) into `conformity' with those for violations of S 605(a) and was mandating that for each offending device involved in the prohibited activity a distinct criminal offense could be charged."). General Instrument, however, asserts the words "penalties and remedies" in S 553(b) bring both criminal and civil actions within the language of the subsection, contending the word "remedies" is redundant unless it means civil sanctions. The structure of S 553 belies this claim. Section 553(a) sets out what is prohibited, S 553(b) provides criminal penalties while S 553(c) provides for civil redress. Indeed, S 553(c) is titled "Civil action in district court . . . ." Applying S 553(b)(3) to a civil case would run counter to these clear divisions. Had Congress intended to change both subsections (b) and (c) it could have added language to both, as in S 605, or possibly to subsection (a). Even a single change to S 553(c) would have had more "universal" application than a single change to subsection (b) as it is S 553(c)(3)(D) which addresses the preemptive effect of S 553. Considering the structure of S 553, we must

20

conclude an amendment to subsection (b) is intended only for that subsection.8

Finally, General Instrument contends the District Court's interpretation of S 553(c)(3)(A)(ii) would provide companies like Nu-Tek a $60,000 "licensing fee" to engage in cable theft with impunity. But as noted, plaintiffs are free to elect actual, rather than statutory, damages when pursuing S 553 claims. See 47 U.S.C.A. S 553(c)(3)(A)(i). In cases where the actual damages exceed $60,000 ($10,000 plus the discretionary $50,000 augmentation), parties will doubtless choose this course. Furthermore, the prospect of criminal liability provides an additional deterrent against cable theft, particularly since the 1992 amendment establishes that each illegal device constitutes a separate violation. Id. SS 553(b)(1); 553(b)(3).

We hold that S 553(c)(3)(A)(ii) expressly limits the available statutory civil damages to a single award of between $250 and $10,000 for all violations.9 Therefore, we will affirm the District Court's damage award.

IV.

The District Court did not err in determining that General Instrument had constitutional and statutory standing to sue Nu-Tek under 47 U.S.C.A. S 553. In our view, S 553 expressly provides a federal remedy for cable equipment manufacturers such as General Instrument to recover for injuries sustained as a direct result of cable theft, thus rendering prudential standing concerns irrelevant. We also hold the court did not abuse its discretion in declining to amend the permanent injunction

---

8. General Instrument also claims the purpose of the 1992 amendment was to conform the penalties and remedies of S 553 with S 605. See, e.g., H.R. Conf. Rep. No. 102-862 (1992), reprinted in 1992 U.S.C.C.A.N. 1231, 1276. But S 605 demonstrates that Congress knows how to write cumulative sanctions. See S 605(e)(3)(C)(i)(II) (stating "the party aggrieved
may recover an award of statutory damages for each violation of subsection (a) of this section . . . and for each violation of paragraph (4)
of this subsection").

9. Plus the discretionary increase of not more than $50,000. See S 553c)(3)(B).

21

or in accepting General Instrument's calculation of attorney's fees and costs. Furthermore, we believe the court properly interpreted the Cable Act's damages provision.

Accordingly, we will affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit