Herbert J. NEVYAS, M.D. Anita Nevyas–Wallace, M.D. and Nevyas Eye Associates, P.C.

v.

Dominic MORGAN and Steven Friedman

No. CIV.A. 04–CV–421.

United States District Court, E.D. Pennsylvania.

March 11, 2004.

the motion to dismiss that the age discrimination claim would no longer be pursued.

Andrew Lapat, Leon W. Silverman, Stein & Silverman PC, Philadelphia, PA, for Plaintiffs.

F. Michael Friedman, Law Offices of F. Michael Friedman, Media, Jeffrey B. Albert, McKissock & Hoffman PC, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action, which Plaintiffs instituted pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125 and under Pennsylvania state law for defamation, breach of contract and specific performance, is now before this Court for disposition of the Defendants' Motions to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6). For the reasons which follow, the motions shall be granted.

### Statement of Facts

This case has its origins in a lasik surgical procedure [1] performed by the plaintiff Anita Nevyas–Wallace on the defendant Dominic Morgan in April, 1998. Apparently defendant Morgan was not pleased with the results of this elective surgery and he therefore retained defendant Steven Friedman, a medical doctor and attorney, to commence a medical malpractice action against the plaintiffs on April 19, 2000. Ultimately, Dr. Herbert Nevyas and Nevyas Eye Associates were dismissed from that action and the case proceeded to an agreed "high-low" arbitration

1. According to paragraph 11 of the plaintiffs' complaint, lasik surgery is a procedure to reshape the cornea of the eye in order to eliminate the need for corrective lenses.

against Dr. Nevyas–Wallace alone before an arbitrator, Thomas Rutter, Esquire in January and February, 2003. The arbitrator subsequently returned a decision favorable to the defense and Mr. Morgan received the minimum low payment previously agreed to.

Still disenchanted with the plaintiffs, defendant Morgan thereafter created a website, "www.lasiksucks4u.com," which allegedly "intentionally and maliciously defamed Dr. Nevyas and Dr. Nevyas–Wallace." (Complaint, ¶s 17–20). Although the parties purportedly entered into an agreement in August, 2003 whereby Morgan would remove all defamatory material and references to the plaintiffs from the website in exchange for the plaintiffs foregoing filing suit against him, Plaintiffs aver that defendant Morgan is again using the website "to make allegations that are defamatory and untrue" about them, that his actions in doing so are "deliberate, outrageous and made with malicious intent to cause harm" to them and that he has now included on the website several letters written by defendant Friedman to the Food and Drug Administration. (Complaint, ¶s 29, 52–53). These letters, Plaintiffs allege, were written for no other purpose "than to try and cause as much harm as possible to Plaintiffs." (Complaint, ¶s 60, 73, 84–85).

In November, 2003, Plaintiffs brought suit in the Court of Common Pleas of Philadelphia County against defendants, seeking the issuance of a temporary restraining order compelling Morgan to cease his defamatory conduct and to adhere to the contract reached in August. In the proceedings before that Court, plaintiffs allege that the defendants assured Judge Sylvester that they had no intention of defaming the plaintiffs, that they would consider deletion of the material which Plaintiffs deemed to be defamatory and that Mr. Morgan only wanted to tell his story with respect to his lasik surgery. (Complaint, ¶s 54–57). On November 17, 2003, Judge Sylvester denied the motion for temporary restraining order, but later that week Mr. Morgan allegedly made further modifications to the website, which included additional defamatory material. (Complaint, ¶s 58–61). On January 29, 2004, Plaintiffs brought this action. Defendants now move to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

### Standards Governing Rule 12(b)(1) and 12(b)(6) Motions

Subject matter jurisdiction is properly contested via the filing of a motion to dismiss pursuant to Rule 12(b)(1). Unlike a motion to dismiss for failure to state a claim in which the plaintiff is entitled to have all reasonable inferences drawn in his favor, when jurisdiction is challenged under Rule 12(b)(1), the court is not required to accept the allegations of plaintiff's complaint as true; instead the burden is on the plaintiff to prove that jurisdiction exists and the courts are not limited in their review to the allegations of the complaint. *Doe v. William Shapiro, Esquire*, 852 F.Supp. 1246, 1249 (E.D.Pa. 1994). A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute. *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1281 (3d Cir.1993). Thus, it is clear that lack of standing is more appropriately characterized as absence of subject matter jurisdiction rather than failure to state a claim. *See, e.g., Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of Borough of Essex Fells*, 876 F.Supp. 641 (D.N.J.1995). Dismissal under Rule 12(b)(1) is proper only when

the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.1991); *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.,* 939 F.Supp. 365, 368 (E.D.Pa.1996). Hence, if jurisdiction is based on a federal question, the pleader claiming federal jurisdiction simply must show that the federal claim is not frivolous. *Radeschi v. Commonwealth of Pennsylvania,* 846 F.Supp. 416, 419 (W.D.Pa.1993), citing *Bartholomew v. Librandi,* 737 F.Supp. 22 (E.D.Pa.), *aff'd* 919 F.2d 133 (3d Cir.1990). Only if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed. *Kronmuller v. West End Fire Co. No. 3,* 123 F.R.D. 170, 172 (E.D.Pa.1988).

In contrast, in considering motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000)(internal quotations omitted). *See Also: Ford v. Schering–Plough Corp.,* 145 F.3d 601, 604 (3d Cir. 1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Companies, Inc.,* 186 F.3d 338, 342 (3d Cir.1999)(internal quotations omitted).

### Discussion

 Defendants move to dismiss Count I of Plaintiffs' complaint on the grounds that it fails to state a claim under § 43 of the Lanham Act and seek the dismissal of the remainder of the complaint in its entirety for, *inter alia,* lack of pendent or supplemental jurisdiction.

Specifically, the plaintiffs premise their claim of federal question jurisdiction upon § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which states:

**(a) Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

■■■ Preliminarily we are presented with the question of whether the plaintiffs here fall within the class of aggrieved parties whose rights Congress sought to protect in enacting the foregoing section of the Lanham Act, *i.e.*, whether they have standing to sue under the Act. The question of standing "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997), quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional component, derived from the Article III "case" or "controversy" requirement, requires a plaintiff to demonstrate (1) that he or she suffered an injury in fact; (2) that the injury is "fairly traceable" to the actions of the defendant; and (3) that the injury will likely be redressed by a favorable decision. *Id.*, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 2136–2137, 119 L.Ed.2d 351 (1992) and *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–471, 102 S.Ct. 752, 757–759, 70 L.Ed.2d 700 (1982); *Conte Bros. Automotive v. Quaker State–Slick 50*, 165 F.3d 221, 225 (3d Cir.1998).

■■■ Prudential standing, on the other hand, is a set of judge made rules forming an integral part of judicial self-government. *General Instrument Corp. v. Nu–Tek Electronics*, 197 F.3d 83, 87 (3d Cir.1999). These requirements are designed to "limit access to the federal courts to those litigants best suited to assert a particular claim." *Id.*, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Stated otherwise, a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit. *Bennett, supra.* However, where Congress has expressly conferred standing by statute, prudential standing concerns are superceded. *Id.; Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 179 (3d Cir. 2001). As a matter of statutory interpretation, Congress is presumed to have incorporated prudential standing principles, unless the statute expressly negates them. *Conte Bros.*, 165 F.3d at 227, citing, *inter alia, Bennett*, 117 S.Ct. at 1162. The Third Circuit has held that, based on the text of § 43(a), the explicit language of the Lanham Act declaring its purpose, as well as the Lanham Act's legislative history, that Congress did not expressly negate the prudential standing doctrine in passing the Lanham Act. *See: Joint Stock Society*, 266 F.3d at 179; *Conte Bros.*, 165 F.3d at 227. Accordingly, we must consider whether the Lanham Act was intended to confer standing upon plaintiffs such as the Nevyas' here who suffer injury by virtue of a non-competitor's allegedly defamatory remarks transmitted via an internet web site.

■■■ The Lanham Act is primarily intended to protect commercial interests and provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising. *Sandoz Pharmaceuticals v. Richardson–Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir.1990). Beginning with *Thorn v. Reliance Van Co.*, 736 F.2d 929 (3d Cir.1984), both the Third Circuit Court of Appeals and the district courts within this circuit have consistently

limited the class of plaintiffs which has standing under this statute. *Petrelli v. Cohen*, Civ. A. No. 93–3906, 1994 WL 52755, at *1, 1994 U.S. Dist. LEXIS 1856, at *4 (E.D.Pa. Feb. 17, 1994), . In *Thorn*, an individual investor in a bankrupt company sought to sue for allegedly false advertisements by one of the company's competitors. The Court in that case looked to § 43(a)'s plain language and concluded that despite the fact that plaintiff was not himself a competitor, he nevertheless had "a reasonable interest to be protected against false advertising" and had alleged a sufficiently direct injury such that he had standing to sue as an investor. *Id.*, at 933.

Several years later, in *Serbin v. Ziebart International Corp., Inc.*, 11 F.3d 1163 (3d Cir.1993), the Court considered whether a group of consumers who purchased rust protection coverage for their automobiles in reliance upon the advertising claims of the defendant company, could sue under § 43(a). In holding that consumers do *not* have standing to sue under the Lanham Act, the *Serbin* court found "no clear indication" of the additional "commitment involved in recognizing a federal tort of misrepresentation and in bestowing access to federal fora without regard to the amount in issue." *Id.*, at 1179. Thus, reasoned the court, "[b]ecause we find no clear indication of such an unusual commitment and because we are satisfied that section 43(a) had an important, though narrower and quite distinct purpose, we join the Second Circuit in holding that Congress, when authorizing federal courts to deal with claims of false advertising, did not contemplate that federal courts should entertain claims brought by consumers." *Id.*

Then, in *Conte Bros., supra.*, the Third Circuit further fleshed out what it meant by "a reasonable interest to be protected." *Id.*, at 231. There, the question facing the Court was whether retail sellers of engine additives could sue the manufacturer of a competing product for purportedly falsely representing that their product would reduce the friction of moving parts, decrease engine wear and improve engine performance and efficiency. Adopting the test for antitrust standing under the Clayton Act as set forth by the Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Third Circuit considered the following factors in determining whether the plaintiffs had a "reasonable interest" that conferred on them standing to sue under the Lanham Act: (1) the nature of the plaintiff's alleged injury; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the plaintiffs to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages. *Id.* at 233; *Unisource Worldwide, Inc. v. Heller*, Civ. A. No. 99–266, 1999 WL 374180 at *5, 1999 U.S. Dist. LEXIS 8530 at *16 (E.D.Pa. June 7, 1999),. *See Also, Joint Stock Society*, 266 F.3d at 179–180. Applying these factors, the *Conte* Court found that the plaintiffs there lacked standing given (1) that the type of injury alleged (loss of sales at the retail level from false advertising) was not only very remote but was also not of the type that Congress sought to redress by enacting the Lanham Act, (2) that the damages suffered were, if not speculative, avoidable and (3) that recognizing the right of every potentially injured party in the distribution chain to bring a private damages action could clearly subject such defendant companies to multiple liability for the same conduct. In so holding, the Court further refined the reasonable interest to be protected by the Lanham Act:

> ...the focus of the Lanham Act is on *"commercial* interests that have been harmed by a competitor's false advertis-

ing and in securing to the business community the advantages of reputation and goodwill by preventing their diversion from those who have created them to those who have not. . . ." (citations omitted). While the Appellants have alleged a commercial interest, they have not alleged competitive harm. Nor is there any indication that Appellants' good will or reputation have been harmed directly or indirectly.

*Conte*, at 234. *See Also: Granite State Insurance Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 321 (3d Cir.1995); *Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 574 (E.D.Pa.2002).

In this case, the plaintiffs allege that they "have been injured and will continue to be injured" by the defendants' "purportedly false and misleading statements" about them "which are intended to deceive potential and current patients of the Plaintiffs so that they will not use Plaintiffs for medical care." We thus find that they have sufficiently alleged that the defendants caused them to suffer an injury in fact to satisfy the constitutional component necessary for standing to sue under Article III. However, nowhere in the complaint is it alleged nor is there any evidence whatsoever that the defendants, a disenchanted former patient and the attorney who represented him in a medical malpractice action, are commercial competitors with the plaintiffs. Indeed, there is nothing in the complaint to suggest that, in creating the website and in disseminating the purportedly defamatory statements over it, the defendants sought to divert the plaintiffs' business to themselves or to personally reap any financial benefit from their actions. As was the case in *Conte Bros.*, despite the fact that the plaintiffs may have suffered an injury to their commercial interests, they have not sustained competitive harm. We thus conclude that the plaintiffs here cannot satisfy the prudential

requirements to maintain standing to sue under the Lanham Act.

 In addition, the contents of the defendants' website does not constitute false or deceptive advertising within the meaning of the Lanham Act either. Although the statute does not define the phrase "commercial advertising or promotion," to qualify as "commercial advertising or promotion," most courts require that the contested representations consist of: (1) commercial speech (2) made by a defendant who is in commercial competition with plaintiff (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, (2d Cir.2002); *Chovanes v. Thoroughbred Racing Association*, Civ. A. No. 99–185, 2001 WL 43780, at *3–4, 2001 U.S. Dist. LEXIS 375, at *26–27 (E.D.Pa. Jan. 18, 2001); *Allen Neurosurgical Associates v. Lehigh Valley Health Network*, Civ. A. No. 99–4653, 2001 WL 41143, 2001 U.S. Dist. LEXIS 284 (E.D.Pa. Jan. 18, 2001); *Unisource Worldwide, Inc. v. Heller, supra.; Guardian Life Ins. Co. of America v. American Guardian Life Assurance Co.*, Civ. A. No. 95–3997, 1995 WL 723186 at *2, 1995 U.S. Dist. LEXIS 18164 at *8 (E.D.Pa. Nov. 15, 1995). *See Also, Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir.1994); *Santana Products v. Bobrick Washroom Equipment, Inc.*, 249 F.Supp.2d 463, 499 (M.D.Pa.2003).

Again, although the contested representations here may have been sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry, we cannot find that they were made by defendants in commercial competition with the plaintiffs

or that they were made with the intention of influencing consumers to buy the defendants' goods or services. For all of these reasons, we conclude that the plaintiffs' Lanham Act claim as set forth in Count I of their Complaint must be dismissed. As Plaintiffs' only federal law claim is dismissed, we shall further exercise our discretion pursuant to 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Complaint shall be dismissed in its entirety without prejudice to the plaintiffs to re-file their state law claims in the appropriate forum.

An order follows.

### *ORDER*

AND NOW, this 11th day of March, 2004, upon consideration of Defendants' Motions to Dismiss the Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and Plaintiffs' Responses thereto, it is hereby ORDERED that the Motions are GRANTED, Count I of Plaintiffs' Complaint is DISMISSED with prejudice and the remaining counts of the complaint are DISMISSED without prejudice to Plaintiffs' right to re-file them in the appropriate state court.